YOUMANS, appellant, v. BOOMHOWER *et al.*

*Fraudulent conveyance — right of creditors— Exempt property — bounty money — enlistment under fictitious name.*

R. placed bounty money, received by him upon enlistment into the army, in the hands of his wife, who afterward purchased real estate, taking title in her own name and paying toward the purchase-price $600 of the bounty money. Afterward the wife gave R., in settlement of a claim by him for the bounty money, her note for $400, after which settlement she sold and conveyed the real estate to B. After this B. bought the note from R., paying him $25. R., claiming that B. still owed him $375 upon the purchase of the note, sued him; B. defended, and the suit was settled. After these transactions, plaintiff, who had obtained a judgment against R., commenced action, asking to have the debt satisfied from the lands and from the note, claiming that said trans-

actions were fraudulent as to him. *Held;* (1) That the bounty money, being exempt from claims of creditors, a gift of it by the debtor to his wife would not be in fraud of creditors. (2) If the intent of R. was that the money should be invested, and his wife, either without or with his consent, took title of the lands purchased to herself, she and R. had a right to settle for R.'s equity in such lands, and having done so, *bona fide,* before the proceed ings were commenced to reach such equity, the lands were discharged therefrom. (3) That the note, while in R.'s hands, although received for bounty money invested, was not exempt; but, having been transferred to B. for a consideration, either paid or satisfied in the settlement of the suit, no collusion or want of good faith in such transfer, suit or settlement being shown, was not liable to any claim of R.'s creditor.

*Held,* also, that the fact that R., at the time he received the bounty, was a deserter from the army, and enlisted under a fictitious name, would not affect the exemption of such bounty.

APPEAL by the plaintiff from judgment of nonsuit at the Delaware special term. Also, appeal from an order denying a motion for a new trial on the ground of newly-discovered evidence.

The action is, in form and substance, a creditor's bill. The plaintiff, William Youmans, Jr., a judgment creditor of the defendant Isaac Ryan, with execution returned unsatisfied, seeks to charge the debt upon lands held by the defendant Abijah J. Boomhower, conveyed to him by Isaac Ryan and his wife, the defendant Mary Ryan, shortly prior to the recovery of plaintiff's judgments.

These judgments were recovered, the first, for $307, October 19, 1866; the second, for $106.25, October 25, 1868; the former on an indebtedness which arose, according to the plaintiff's evidence, in the years 1862, 1863, 1864 and 1865.

About 1865, perhaps shortly prior to that date, the defendant Ryan enlisted into the military service of the United States, and obtained a bounty of $900 or $1,000 — $300 in money and $600 or $700 in bonds. The bonds and most of the money were sent by Ryan to his wife, and she purchased the premises sought to be charged in this action, paying therefor $600 from such bounty, and took the deed in her own name. The deed to Mrs. Ryan bears date August 21, 1865.

On the 24th of August, 1866, Mrs. Ryan conveyed the premises to the defendant Boomhower. It seems, also, that Ryan, the husband, executed a deed of the premises to Boomhower, ante-dated February 3, 1866; but, for aught that appears, he had no title, hence no right passed by this deed.

About August 15, 1866, Ryan and his wife settled between themselves in regard to the bounty, most of which had gone into the purchase of the premises, and Mrs. Ryan gave her husband a note for $400 on such settlement. This note was purchased by Boomhower, as he claimed, for the sum of $25; but as Ryan insisted Boomhower was to pay him the balance of $375. In October or November, 1866, Ryan sued Boomhower for this balance. The latter interposed a defense, averring that he had paid all he agreed to pay on the purchase; also, that the note was without consideration; was never delivered, and was void. Before the action was brought to trial it was settled by the parties, and the suit was terminated.

The plaintiff in this action set up that the land was chargeable with the payment of his judgments, and asked that the same might be so adjudged, and that he might have satisfaction of his demands therefrom, from the note, insisting that the transactions between the parties were fraudulent and void as against him.

At the conclusion of the evidence on part of plaintiff, the plaintiff was nonsuited, and judgment of dismissal of the complaint was given against him. Pending this appeal, plaintiff moved, after leave obtained at special term, for a new trial, on the ground of newly-discovered evidence that Ryan at the time of his enlistment was a deserter, and enlisted and received his bounty under a fictitious name. The motion was denied and plaintiff appealed.

*Wm. Youmans, Jr.*, appellant in person.

*F. Jacobs, Jr.*, for respondents.

BOCKES, J. That Ryan received his bounty, passed it over to his wife, and that she invested it, to the extent of $600, in the premises here sought to be charged with his debts, taking the conveyance to herself, there is no question. The plaintiff insisted that the transaction was but a gift to the wife — hence that the land so held by her was chargeable in equity with the husband's debts. To this position it was answered that notwithstanding it was a gift, still the subject of the gift, the bounty, was exempt by law from all claim on the part of Ryan's creditors, and, therefore, the rule in equity above suggested had no application. This view of the case was sustained at the special term, and the complaint was dismissed.

It cannot be questioned but that Ryan's bounty was exempt

from all claim by his creditors. The law so declares. (Laws 1864, chap. 598, § 4.) Nor would it make any difference that he received it under a fictitious name. It may be here remarked, however, that there was no evidence given on the trial showing that he obtained the bounty under any other than his true name. In Ryan's hands, then, the bounty was exempt as above stated. So long as it so remained in his hands, it could not be reached by his creditors. The question then at once arises, how could the giving it away work any injury to them? A gift is held to be fraudulent as to the creditors of the donor, because they have a right to insist that his property shall be made to answer his debts. But here the creditors of Ryan held no such position as to his bounty. They had no claim upon it, either in law or equity, none whatever more than they would have if the bounty had belonged to a stranger. How, then, could they be defrauded or injured by any conceivable transfer or disposition of it? A gift by a husband to his wife is good, and will be upheld when the rights of creditors are not concerned. *Borst* v. *Spelman*, 4 N. Y. 284; *Kelly* v. *Campbell*, 38 id. 29; *Lockwood* v. *Cullin*, 4 Rob. 129. There are many other cases to the same effect. So, if Ryan made a gift of his bounty to his wife, it then became her property, with no legal or equitable claim upon it, by or in behalf of his creditors. *Whiting* v. *Barrett*, 7 Lans. 106. If they had no claim to it in law or equity in his hands, it is not a little difficult to see how the transferring of it to a third party by gift, or otherwise, could create a right which before did not exist. A gift of exempt property by a debtor cannot operate as a fraud on his creditors. It follows, therefore, that the learned judge was right in holding that the plaintiff had failed to establish a cause of action based on the hypothesis that the bounty was given to the wife.

The decision in *Wygant* v. *Smith*, 2 Lans. 185, has no application to this case. There the bounty had been exchanged into other property, the title to which still remained in the party himself. It was held that the exemption act did not extend to and protect such property. Here the question is, whether the husband's creditors may assail the transfer of his bounty by gift to his wife, or follow it when invested in her name free from any trust for the husband's benefit The cases are widely different.

There is another view of the case, however, which demands consideration. There was evidence tending to show that the transaction

was not a gift; that it was not so intended or considered by the parties; for it seems that, subsequently, they had a settlement in regard to the matter of the investment of the bounty, when Mrs. Ryan gave her husband her note for $400, with the understanding, doubtless, that he should make no further claim to the land, the title to which then stood in her name. A settlement and the giving of a note by the wife seems inconsistent with the idea that the bounty had been given to her. This would rather be evidence that the wife had invested the husband's bounty in the land and taken the title to herself without his consent. Now, suppose it be assumed that such was the case, then Ryan had a right in equity to the premises, and could have enforced such right. *Lounsbery* v. *Purdy*, 28 N. Y. 568. But it was susceptible of arrangement by settlement between them. The husband's right was a mere equity, on which his creditors had as yet no specific lien or claim. It was competent for Mrs. Ryan to satisfy this equity and thus have the premises discharged therefrom. This was directly decided in *Cramer* v. *Blood*, 57 Barb. 158; affirmed in court of appeals, 48 N. Y. 684. Now this was the condition of the case when the settlement was made. Consequently, the settlement between Ryan and wife was good in equity, and in absence of all actual intent to defraud his creditors, of which there is no evidence, it would be upheld and stand good as to all the world. The effect was to sanction and ratify the title in the wife, freed and discharged from the husband's equitable claim to the property, in consideration of her note of $400 and such other matters as were brought into the settlements. In this view Mrs. Ryan's title was good, both in law and equity, not liable to be impugned by her husband's creditors, and of course her conveyance would confer like good title to her grantee.

Her position became that of a purchaser in good faith for a valuable consideration, with title from a third party. Having settled with her husband fully and honestly in regard to the consideration, before the rights of creditors attached, her title would be paramount to any claim which they could have; and they would be compelled then to resort to whatever the husband might have received in satisfaction of the latent equity.

If, therefore, the investing of the bounty in the land in the wife's name was followed by an honest settlement between them in regard thereto, before such creditors had taken any steps to enforce their

rights, the latter could have no just claim upon the land for satisfaction of their demands.

The case has been here considered as if the husband's bounty had been invested by the wife, in her name, *without his consent;* but the same result would follow, had it been so invested by her with his consent.

It is true that, when the consideration is paid by one person and the conveyance is made to another, while no trust results to the former, yet, a trust results in favor of his creditors to the extent that may be necessary to satisfy their just demands. So every such conveyance shall be presumed fraudulent as against his creditors. 1 R. S. 728, §§ 51, 52; 15 N. Y. 475, 478; 22 id. 564; 47 id. 544.

But this must be considered as having reference to a case when the creditors have a right to require an application of the consideration so paid to their just demands. As was said above, when considering the case on the hypothesis that the bounty was donated to the wife, the husband's creditors could not be defrauded by any use or application of money or property, to or for another's benefit, unless they had some right or equity in regard to it. If exempt from all claim by creditors, no use or employment of it, whatever, could raise an implied or resulting trust in their favor. The statute was not intended to have, nor has it, any application to such a case.

Therefore, whatever view of the case is taken, we are of the opinion that the plaintiff has failed to establish any claim against the land for the satisfaction of his judgments.

A question still remains in regard to the note of four hundred dollars. That note in Ryan's hands was subject to the claim of his creditors. Notwithstanding it was received in settlement and satisfaction of the bounty investment, it was not protected by the exemption act, according to the decision in *Wygant* v. *Smith, supra.*

But it seems that Ryan transferred the note to Boomhower, and having sued the latter, claiming that he, Boomhower, had not paid the amount he agreed to pay for it, and, after the case was put at issue, the parties settled the suit. There is no evidence but that the suit was prosecuted and defended in earnest, nor that the settlement was not *bona fide.* All we have before us is, that the suit was instituted by Ryan against Boomhower to recover the amount alleged to be due on the sale and transfer of the note to the latter;

that Boomhower interposed various defenses; whereupon the parties settled the case. There is no evidence how they settled. For aught that appears, Boomhower paid Ryan on the settlement the full amount claimed. The parties had a perfect right to make the settlement. No creditor had then taken any steps against the parties in regard to the note, or in regard to any claim Ryan had growing out of its transfer. The settlement was, therefore, a bar to any claim the plaintiff, as creditor of Ryan, could, thereafter, possibly make, to compel further payment from Boomhower by reason of the transfer of the note by Ryan to him. *Cramer* v. *Blood, supra.* When this action was commenced Ryan had no claim against Boomhower growing out of the transfer of the note; and the plaintiff, by this action, could only obtain Ryan's rights in that regard.

Therefore, in every view of the case, we are of the opinion that the judgment dismissing the complaint was right, and that it should be affirmed, with costs.

The order denying a motion for a new trial on the ground of newly-discovered evidence should also be affirmed. The principal, if not the only, evidence alleged to have been discovered since the trial at the circuit, is that Ryan deserted from the military service, and afterward enlisted under a fictitious name; and received the bounty under such false name. A question was made at special term, on the papers, whether, in point of fact, Ryan was a deserter. But, admitting that he was, and that he obtained the bounty under an enlistment under a fictitious name, these facts would not aid the plaintiff at all in the action. The fact would still remain that the money and bonds were received as a bounty for his enlistment and services as a private in the military service of the United States; which bounty was exempt by law from all claim by his creditors. Other grounds of decision are recited in the order appealed from, in which we fully concur.

The order and judgment is affirmed, with costs.

MILLER, P. J., and BOARDMAN, J., concurred.

*Order and judgment affirmed.*