[284]          Borst and wife *vs.* Spelman and Fraser.

Where an obligation is taken to the husband and wife, or to the wife alone, with the husband's assent, it survives to the wife as against the representatives of the husband, and this is the rule at law as well as in equity.

In such cases, the form of the security implies a design on the part of the husband to benefit the wife, and the law will give effect to the intention where the interest of creditors is not affected.

The defendants executed to R., a married woman, a receipt expressing that they had received various demands from her for collection, and agreeing to account to her when they should be collected. In an action brought by R. and her second husband, to recover the proceeds of the demands, *held,* that the receipt was evidence against the defendants, either that the securities belonged to R. in her own right, or that the contract was made by them with her, with the knowledge and approbation of her husband.

And held further, that letters and declarations of the husband to the defendants, subsequent to the date of the receipt, were not competent evidence to prove that he "acted as owner of the securities," there being no offer to show that he *repudiated* the arrangement, or discharged the defendants from their engagement to account to the wife.

A gift by a husband to a wife will be upheld when the rights of creditors are not in question.

This court can not review the decision of referees, or the judgment of a subordinate court, where the error is one of fact merely, however clearly the finding may have been against the testimony.

Appeal from the supreme court, where the action was assumpsit, brought by John B. Borst and Elizabeth his wife, against Jesse B. Spelman, and Alexander Fraser. The case was tried before referees, before whom it was proved, on the part of the plaintiffs, that the plaintiff Elizabeth had been married to a former husband, L. E. Root, deceased, in May, 1837; that before their marriage, articles of settlement were entered into between them, reciting that she was possessed of considerable personal estate, and vesting the same and every part thereof, in one William H. Munn, as her trustee, for her sole and separate use, free from any control of her intended husband. By the same articles she renounced all claim upon the real or personal estate of Mr. Root, in case she survived him. The plaintiffs then read in evidence a receipt signed by the defendants, as follows :

Borst *v.* Spelman.

" 1837. List of notes received from Mrs. E. Root for [285] collection, Oct. 20, 1838.

Part paid, A. Fryers, due 28 Sept. 1837, - - 400 00
" " Mills & Eno, due 18 ms. Sept. 1837, - 292 00
" " Geo. Gillis, " 9 ms. April 30, 1834, 18 88
" " " 36 " " " 37 36
E. C. Warner, due 1 May, 1838, - - - 187 50
J. Le Grange Knox, agreement for rent of store in Troy, see agreement on file, - - - - - 300 00
Daniels & Balls, Oct. 15, 1833, - - - - 376 37
" " 15, 1833, - - - - 311 32
M. M. Ross, 12 ms. January 16, 1836, - - - 94 46
H. P. Thompson, 8 ms. May 26, 1837, - - - 36 00
Mills & Eno, 90 days, Sept. 11, 1838, - - - 192 00
R. Noble & Son, due 1 May, 1839, 18th Oct. 1838, for 650 00

Received the above to *be accounted for to Mrs. E. Root*, or order, when collected. SPELMAN & FRASER."

The plaintiffs also proved that at the date of the receipt, Elizabeth was still the wife of Root, and that after his death, and her marriage with Borst, and before this suit was commenced, the defendants were called upon to account according to their receipt. The plaintiffs then rested their case.

The defendants, thereupon, insisted that the plaintiffs had not made out a prima facie case; that there was no evidence of the collection, by them, of the demands mentioned in the receipt, or any of them; that there was no evidence that the plaintiff, Elizabeth, ever had any separate property; that the ante-nuptial agreement before mentioned did not prove the existence of separate estate, as against the defendants; and that the demand, if recoverable at all, could only be recovered in equity. The referees decided that enough had been shown to put the defendants on their defence.

Evidence was then given on the part of the defendants, tending to show that the notes and demands mentioned in the receipt belonged, up to the time the receipt was given, to the husband Root, and that they had previously been deposited by him [286]

with the defendants. He had been in the habit of leaving demands with them for collection. The defendants offered in evidence letters written by Root, addressed to the defendants, of a date *subsequent* to the receipt, in order to show that Root " acted as the owner of the bills and notes mentioned in the receipt, and assumed to direct concerning them." This evidence was objected by the plaintiffs and excluded. The defendants also offered to prove verbal declarations made by Root, of a similar character, subsequent to the date of the receipt. This evidence was also excluded.

It farther appeared, that the trustee constituted by the ante-nuptial agreement aforesaid, actually received into his hands, no property as Mrs. Root's, except the sum of $700 to $900, from her father's estate, which the trustee paid over to her and she expended it. Munn ceased to be trustee in October, 1838, and no other person was substituted in his place. Mr. Root died in August, 1839, and Mrs. Root married Borst in July, 1842.

The referees reported the sum of $2251,79, in favor of the plaintiffs, and the supreme court confirmed the report, and rendered judgment thereon. The defendants appealed to this court.

*A. C. Bradly,* for appellants. All the property mentioned in the receipt belonged to L. E. Root, and the title could be changed from him to his wife only by some act of his own. Nothing was given in evidence proving, or tending to prove, any sale or gift of this property to her. That he had given her *other* property, is no evidence that he had given her this ; nor is evidence that he admitted that she owned *other* property, evidence that she owned *this*. All these demands were in the hands of the defendants for collection as his agents, at the time the receipt was given. They were not, therefore, received at the time nor of the person stated in the receipt.

The receipt is no estoppel. The defendants acquired nothing by giving it. Mrs. Root neither did nor omitted to do any thing by reason of it whereby the defendants should be pre-

cluded from showing the truth, both as to the person of whom these demands were received and to whom they belonged. [287] (*Dezell* v. *Odell,* 3 *Hill,* 215 ; *Hearne* v. *Rogers,* 9 *B. & C.* 377 ; *Wallis* v. *Truesdell,* 6 *Pick.* 455 ; *Welland Canal Co.* v. *Hathaway,* 8 *Wend.* 483.) Besides, the receipt is, under the circumstances of this case, no evidence that the property mentioned in it belonged to Mrs. Root. By no construction can it be made to admit more than that she had them in her possession and delivered them to the defendants. At most, it is an admission of possession ; and possession, in all cases slight evidence, is here no evidence of title. The property was her husband's ; no sale or gift to her was proved. Her possession was therefore his possession ; she was his agent. (*McKinley* v. *McGreyor,* 3 *Wharton,* 369 ; *Church* v. *Landers,* 10 *Wend.* 79.) But even if she had been not his wife, but a mere stranger, bare possession of property, even with the exercise of acts of ownership over it, will not authorize a jury to find a transfer of property where there is no proof of acquiescence or recognition of the former owner, of such possession. (*Tompkins* v. *Haile,* 3 *Wend.* 406.)

But even if there had been proof that Mr. Root had sold or given this property to his wife, the case would not have been changed. Husband and wife are, in legal contemplation, but one person, utterly incapacitated from making any binding contract with each other ; and a sale or gift from him to her would be merely void. The property would in law still remain his—continue subject to his control, and at his death go to his personal representatives, and not survive to her. (*Washburn* v. *Hale,* 10 *Pick.* 429 ; *Griswold* v. *Penniman,* 2 *Conn.* 564 ; *Parker* v. *Stuckeat,* 2 *Miles,* 278 ; *Thorne* v. *Dillingham,* 1 *Denio,* 254, *and the authorities there cited.*)

On the facts disclosed in this case, there would be a clear right of recovery for these same moneys by the executors of Mr. Root. The property is shown to have belonged to him. They are shown to know it. Root did no act to divest himself of the title. The promise to account to her, adds nothing either to her rights or to the defendants' liability. If the property had been her's, the law would have implied the promise

[288] if none had been expressed. But the property not being her's, the promise is without consideration. A promise never, except in sealed instruments and commercial paper, implies a consideration.

The referees erred in excluding evidence of the letters and declarations of Root, tending; to show his ownership of and authority over the demands 'left with the defendants for collection, and his disaffirmance of his wife's title.

*J. B. Staples,* for respondents.

GARDINER, J. Where an obligation or contract is taken' to the husband and wife, or to the wife alone, with the assent of the husband, the action survives to the wife, who is entitled to the proceeds, as against the heirs and personal representatives of the husband. This is the rule at law, as well as in equity. (*Com. Dig. tit. Baron and Feme ; Draper* v. *Jackson,* 16 *Mass. Rep.* 483 *to* 486.) In these cases, the form of the security implies a design by the husband to benefit the' wife, and the law will give effect to that intention where the interest of creditors is not affected.

The receipt of the 20th of October, 1838, executed by the defendants, declares " that the notes therein specified were received from Mrs. Root for collection, to be accounted for to her, or order, when collected." This engagement is evidence against the defendants, either that Mrs. Root had some interest in the securities delivered to them, in her own right ; or that the contract was made by them, with her, with the knowledge and approbation of her husband. This presumption, I think, is strengthened by other evidence in the case ; but it is enough that the referees have found in favor of the plaintiff. Their report, which is adopted by the supreme court, is conclusive as to the fact of the defendants' liability, unless they have erred in the admission or rejection of evidence. The offered evidence was properly rejected. Proof tending to show Root's agency and relation to these securities, and that in 1839 he gave directions about them, (which would be acting as owner,) was con-

sistent with his approval and participation in the arrangement, made the year previous. The offer was not to prove that [289] he repudiated that arrangement, or discharged the defendants from their agreement, either in writing or by parol, but to show by a letter that he *acted as owner*, not that he claimed to be owner of the securities in question. The substance of the various offers was merely to prove that he gave advice, or instructions, in reference to the demands. This would be acting as owner, while his conduct, at the same time, was precisely that which, from his knowledge of the securities and his relation to Mrs. Root, might have been expected, and therefore consistent with his continued acquiescence in the previous agreement. After their liability was established by competent evidence, the defendants must at least prove a release or discharge, or something equivalent, by the husband. The proposed evidence fell short of this, and it was not offered as a part of a claim of testimony reaching to that result.

I think the judgment should be affirmed.

———

PRATT, J. It is very questionable whether the case in this cause is so settled as to raise any point thereon except that in relation to the exclusion of the evidence of Root's declaration. The facts, as I understand the case, are not found or settled, but simply the evidence. If the referees have drawn erroneous conclusions from this evidence, there is no jurisdiction in this court to correct the error. We can only correct errors in law, and not errors of fact.

It is insisted that there was no evidence, when the plaintiff rested, to authorize a recovery, and that the referees erred in requiring the defendants to go into the defence. Although it may be questionable whether the counsel had a right to call upon the referees to pass upon the plaintiff's evidence at this stage of the hearing, I shall assume that the defendants had this right, and shall treat it as a motion for a nonsuit at the circuit. It then presents the only point in the cause.

Was there then, at this stage of the case, any evidence to support the action? A receipt had been proved by which the

defendants acknowledged that they had received a number of [290] demands from Mrs. E. Root for collection, and agreeing to account to her or her order for them. I think this receipt is evidence against the defendants that they belonged to her. That they might belong to her is manifest. Suppose they had been choses in action belonging to her at her marriage, and which the husband had never reduced to his possession. At his death they would be her's. Indeed as I understand the authorities, an agreement with a feme covert and a promise to her raises the presumption that she is the meritorious cause of such agreement, and it will survive to her. In *Phillskirk and wife* v. *Pluckwell*, (2 *Maule & Sel.* 393,) a promissory note was made payable to a *feme covert;* the court held that prima facie she was the meritorious cause of action. (16 *Mass.* 480; *Clancy's Married Women,* 3, 5, 6, *and cases cited.*) In this case, the ante-nuptial settlement shows that the wife was to have absolute control of her own property, and recited that she was then possessed of considerable personal property. Now although the trustee, during the husband's life, would be deemed the legal owner, at his death the purposes of the trust would be fulfilled, and the use would be deemed executed in her. At all events it would show that the husband had no interest in the property; and the feme covert contracting in her own name in relation to this property, would clearly have a right to sue in her own name upon the contract after her husband's death. The evidence was therefore sufficient prima facie to sustain the plaintiff's action.

But it is insisted that the evidence on the part of the defendants showed clearly that these notes belonged to L. E. Root the husband. Suppose the evidence is sufficient to show that: the only result is that the referees have found against the weight of evidence. The remedy in such case was in the court below, by motion to set aside such report. As I have said before, and as it has been repeatedly decided by this court during the short time I have been a member of it, this court has no power to correct erroneous decisions on mere matters of fact. It is entirely immaterial how clear and conclusive the evidence is,

if the referees and the court in which the action is pending both err in relation to a matter of fact, there is no relief.

The fact that the husband owned the notes has not been [291] expressly found, and we have no right to assume that fact, however strong the evidence. But if they did at one time belong to him, as his wife had separate property, perhaps he owed her and turned it out to pay the debt, or he might have given it to her. It also appears that these defendants kept an account with her, separate from the account which they kept with her husband. The evidence tending to show the notes to belong to the husband is therefore by no means conclusive—but might have been, and for aught we know was explained. As long as no error of law has been committed, we can not reverse the judgment. The exclusion of Root's admissions was clearly right. He could not admit away the right of his wife.

The judgment should be affirmed.

BRONSON, Ch. J. I am of opinion that the case as settled does not properly raise the questions which have been discussed at the bar, and am therefore for affirming the judgment without considering those questions.

RUGGLES, J. (dissenting.) There was a marriage settlement between Root and his wife, (who is now the wife of Borst and one of the plaintiffs,) the main object of which seems to have been, to secure to her separate use the property she expected from her father's estate. It does not appear that her trustee ever held anything under the marriage settlement as her separate property, excepting from $700 to $900 which was paid over to and spent by her. The notes and securities mentioned in the receipt given by the defendants on the 30th of October, 1838, belonged until that time to her husband Root. They were put into the hands of the defendants by him, some time before the receipt was given, and were in their hands at that time. Mrs. Root had never had them in her possession nor under her control. It does not appear that Root was indebted to his wife or that he was under any obligation in equity or otherwise to con-

vey this property to her, or to settle it upon her. The securities were passed to the trustee under the marriage settlement. That [292] instrument did not contemplate any gift or settlement by the husband of any personal property upon his wife. On the contrary, she thereby renounced all claim to any distributive share in his personal estate at his decease, if she should survive him.

The claim of the plaintiffs rests solely, therefore, upon the receipt, by which they say the defendants received the notes from Mrs. Root, to be accounted for to her or her order when collected. And unless this receipt transferred the notes to her separate use and made them her separate property, the plaintiffs must fail.

It does not appear whether the receipt was taken by the wife to herself by and with her husband's assent, or not. If it was her act alone, without authority from her husband, his right to the property, clearly, could not be affected by it. But assuming that it was so made by his authority, it was not a valid transfer of the property to the wife. It did not purport to be a transfer by the husband, nor to give the property to the separate use of the wife. Nor was it an acknowledgment by the defendants that it belonged to the wife as her separate property. The receipt was given on the 28th of October, 1838, a few days before Root the husband set out to go to Havana; and my construction of the transaction is, that the receipt was drawn to the wife with the assent of the husband, to enable her to receive the avails of the notes for her subsistence, and for safe-keeping during his absence; a mere authority to the defendants to pay the husband's money to the wife, without which, if paid over to her while her husband was abroad, the defendants would have been liable to pay it a second time to him or his representatives.

The receipt cannot operate to estop the defendants from denying that the notes were separate property of the wife, because the receipt does not in terms declare that they were so. The defendants say they received them from the wife: and this may be true although they belonged to the husband; and their promise to account to the wife is, in effect, a promise to account

to the husband, unless it be in relation to the separate property of the wife, which these notes were not.

So far as regards the ownership of the notes, as between the husband and wife, the receipt is equivocal; or if it should be regarded as *prima facie* evidence, it is open to explanation [293] by parol, and the explanation shows beyond a doubt that the notes for which it was given were the property of Root the husband, and not of his wife. In this respect there is no resemblance between this case and that of a bond given to the wife or to the husband and wife jointly. There is no color for saying that the money in question was given to the wife in lieu of the capital put into the concern of C. N. Mills & Co. of New Orleans. For the $8000 in money and property put into that concern, the firm gave their note payable to Mrs. Root or order, which went into her hands, the greater part of which has since been collected by the plaintiff Borst.

The decision of the referees in favor of the plaintiffs was a conclusion of law upon the facts stated in their report; and I think it erroneous, as was also the judgment of the supreme court confirming the report.

HARRIS, J. was also for reversing the judgment.

TAYLOR, J. not having heard the argument, gave no opinion.

Judgment affirmed.