Anderson J.
This controversy is in relation to the *365 deed executed by Reuben Sayers to his wife, Eleanor Ann Sayers, on the 15th day of November 1855; whether the real estate conveyed by it vested in Mrs. Sayers, and descended to her children and heirs at her death; and whether they can hold it against subsequent creditors of Reuben Sayers.
Before proceeding with this inquiry, it will be well to dispose of a question raised by the record, whether the appellants, or any of them, have, by their deed, reinvested Reuben Sayers with any interest or estate, which he may have passed to «his wife by said deed? bTo such reconveyance or release to Reuben Sayers is alleged by the plaintiffs in their pleadings. But a paper, purporting 'to be a deed of conveyance or release from three of the four heirs of Mrs. Sayers to Reuben Sayers, having been brought to the notice of the court by the master, and a certified copy of it from the records of the register’s office exhibited with his report, it was very properly noticed by the appellants in their petitions to be made parties defendants and in their answers. They aver in their petitions, and in their answers, that said paper was never delivered as their deed. That it was never intended to be delivered as a deed, except only upon a certain contingency which never arose, and that it never was delivered. That one of the plaintiffs got possession of it from the magistrate before whom it had been acknowledged, without the knowledge or consent of either of them, or of Reuben Sayers, to whom it had not been delivered, by paying the magistrate’s fees, who delivered it to him without authority. And that the plaintiff, after thus getting unlawful possession of it, without authority, and without their or Reuben Sayers’ knowledge or consent, lodged it with the clerk to be recorded, and paid the tax on it and the clerk’s *366 fees for recording. These allegations are fully sustained by evidence.
I am clearly of opinion that said paper cannot operate as a conveyance or release of anything to Reuben Sayers; and that if there was any estate vested in the appellants by the death of Mrs. Eleanor H. Sayers, under the conveyance of November 15th, 1855, it is not divested or impaired by that paper.
I proceed now to inquire, whether any rights vested in Mrs. Sayers, under the said conveyance of her husband, which have descended to her children, and which are not liable to the judgments of subsequent creditors of the grantor against him? This is the important, the main question in the cause.
“There is nothing inequitable or unjust (Mr. Justice Story remarks) in a man’s making a voluntary conveyance or gift, either to a wife or to a child, or even to a stranger, if it is not at the time prejudicial to the rights of any other persons, or in furtherance of any meditated design of future fraud or injury to other persons.” Stor. Eq. Jur., § 856.
In Sexton v. Wheaton, 8 Wheat. R. 229, Marshall, Chief Justice, in delivering the opinion of the court, assumes that the conveyance in that case “must be considered as a voluntary settlement made on his wife by a man who was indebted at the time.” And he inquires, “ Can it be sustained against subsequent creditors ?” In his answer to that question he says: “ It would seem to be a consequence of that absolute power which a man possesses over his own property, that he may make any disposition of it which does not interfere with the existing rights of others; and such ■disposition, if it be fair and real, will be valid. “In these few words, that great judge enunciates a principle, upon which all cases of this class may be deter *367 mined, and upon which their decision may rest. It is the absolute right of a man to dispose of his own property as he pleases, so that he does no injury to the existing rights of others. The question is, in every case, did the voluntary conveyance interfere with the existing rights of others? If it did not, and was real and bona fide, the grantor having an absolute right to part with his own property, and to bestow it on whom he pleases, his conveyance is valid. There are none who can gainsay it. By his deed of conveyance his grantee is absolutely invested with the title; and the •subsequent dealings of the grantor with others, or the liabilities which he may subsequently come under to others, cannot impair or affect the rights which had vested in his grantee. The property which vested in his grantee by a fair and bona fide conveyance, is no longer his, and cannot be made liable for his debts subsequently contracted. “The limitations to this power (the Chief Justice further says) are those only which are prescribed by law.” He then proceeds to consider the statute against fraudulent conveyances. “In construing this statute (he says) the courts have considered every conveyance, not made on consideration deemed valuable in law, as void against previous creditors. With regard to subsequent creditors the application of this statute appears to have admitted of some doubt.” After a lucid and extensive review of the cases, he thus concludes: “From these cases it appears that the construction of this statute is completely settled in England. We believe that the same construction has been maintained in the United States. A voluntary settlement in favor of a wife and children is not to be impeached by subsequent creditors on the ground of its being voluntary.” I think, in this con *368 elusion, he is sustained by the current of decisions in-England and America.
But it may be impeached on the ground that it is fraudulent; 'The plaintiffs do not charge fraud in their original or amended bill. They take no notice of this deed of conveyance in any way. They altogether ignore it, although they' had actual.knowledge of its-existence before they brought this suit. They did not bring the suit until after they got possession of the-paper purporting to be the deed of three of thfe children and heirs of Eleanor A. Sayers to Reuben Sayers. Mr. Cecil, the justice, testifies that they got possession of it in the spring of 1871, and he thinks before the-1st of June 1871, the date of the institution of this suit; and the certificate of its recordation is dated 27th April 1871. They must have had possession of it prior to that date. This paper refers expressly to the deed from Reuben Sayers, to his wife Eleanor A. Sayers, of the 15th of November 1855, and purports to release all their claims as heirs at law of said Eleanor. The plaintiffs certainly had actual knowledge of the existence of the said deed at that time, if they had not before. The presumption is, they had knowledge of it before. There was no concealment of it. It was written by the clerk, the printed copy states, on the 15th of November. On the 21st of November it was acknowledged before him in his office after it had been delivered to Mrs. Sayers, and was admitted to record. No doubt it was a subject of remark, and was known generally by his neighbors. But the registration was constructive notice to the world, and the presumption is, that these plaintiffs were apprized of it when they afterwards credited him. The only allegation of fraud is made by Hudson, adminis *369 trator of Hamilton Sayers, in his petition for a rehearing. Vet the final decree for the sale of the lands is founded only upon the ground that the conveyance is fraudulent and void as to creditors. If fraud had been alleged in the pleadings, (and it might have been by an amended bill or by answer to the appellant’s petitions to be admitted defendants', if the plaintiffs believed there was any ground for the allegation,) what proof is there to support such a charge, or the assumption of the decree? Mr. Justice Story adds to what I have heretofore quoted from him, and in the same section: “If, indeed, there is any design of fraud or collusion, or intent to deceive third persons in such conveyances, although the party be not then indebted, the conveyance will be held entirely void as to subsequent as well as to present creditors; for it is not bona fide.” Cord’s-Legal and Equitable rights of Married Women, § 54, 75, citing Ld. Townsend v. Windham, 2 Ves. Sen. E. 1; 12 Ves. R. 155. Let the rule, as thus clearly laid down, be applied to the case in hand.
At the date of said deed, Eeuben Sayers, the grantor, was the owner of a large personal property, in addition to the real estate he conveyed to his wife, consisting of slaves, horses, cattle, sheep, hogs, wagons, farming implements, house furniture, &c., of the value of from ten to twelve thousand dollars. His indebtedness did not exceed $100. After the execution of said deed, he continued to live upon the farm, and had the management of it, supporting his wife, and educating and maintaining their children. He purchased and paid for another tract of land, which he sold again. He dealt liberally in cattle, buying and selling, which seems to have been a source of considerable income; he seems to have been a man of thrift and good credit, and his personal estate was aug *370 mented rather than diminished, until the end of the war. The trifling debt he owed prior to the execution of the deed in question, seems to have been satisfied, and the debts which he now owes, and which are proved in this cause, were contracted by him subsequent to said conveyance. The precise date at which they were severally contracted does not appear, but none of them earlier than 1857 or the latter part of 1856, except two small notes amounting to about $51, which he owed prior to the conveyance, and which were transferred to the plaintiffs, it does not appear when. These notes were incorporated with the debt, subsequently contracted with Wall & Jordan, and embraced in the new obligation, which they took for the whole—upon which he afterwards paid, as appears from the judgment, $75- Whether he had made any payment to those parties upon his indebtedness to them, before the execution of the bond or note upon which the judgment was rendered, does not appear. I think, whether the evidence shows the novation of that small pre-existing debt, or not, it may be assumed, so far as it concerns the question now involved, that it has been satisfied. And I think it may be fairly inferred from the evidence in the record, that there was not a point of time, from the 15th of November 1855 until the close of the war, that a moiety of the personal estate owned by Reuben Sayers, would not have been ample, and more than sufficient, to have paid every debt he owed in the world. The conduct of his creditors shows that they regarded it ample to secure them. It was upon the faith of that they credited him, and forbore to collect their debts—for they must be presumed to have known that the real estate did not belong to him, but was the property of his wife. (It does not appear that they thought of sueing *371 until after they got possession of the supposed deed of release.) And we have seen that his personal estate was ample to give him the credit he had.
What fraudulent motive could he have had to make said conveyance to his wife ? He still retained ample property in his own hands to satisfy all the debts which he actually subsequently contracted. It could not, therefore, have been in anticipation of contracting those debts and avoiding the payment of them that he conveyed his real estate to his wife; for he had ■ample property left to satisfy them. The same fact is a complete answer to the argument of appellee’s counsel, that he made the conveyance in contemplation of incurring a debt of $3,000 for the building of a residence on the farm. Why would he have made a conveyance for such a purpose, when he knew that he retained property out of which the cost of the building he contemplated erecting could be made, if it were ■even threefold or fourfold the actual cost. I am satisfied from the proofs in the cause, that Reuben Sayers, in contracting the subsequent debts, was conscious of his ability to pay them, and had no thought or purpose of not paying them; and that his creditors credited him, and forebore with him, upon the faith of his personal property, which was ample to pay his debts; and that he and they were disappointed by the result of the war, which wrested from him, by the power of the sword, the property which he relied on in the main as ■affording him the means of paying his debts, and upon the faith of which his creditors credited him. It does not appear that he was sued by any creditor before the close of the war. If all of them had sued and obtained judgments before its termination, he had ample property to have satisfied every dollar he owed; and *372 if their debts are lost, it is the misfortune of both, rather than the wrong of either.
But it was argued by appellee’s counsel, that the-conveyance of the whole of his real estate to his wife—so large a proportion of all he was worth—is a badge of fraud. The same argument was urged in Sexton v. Wheaton. It was contended that the house and lot contained in the deed to his wife was the bulk of Wheaton’s estate. The chief justice said: “If the-fact were proved, it does not follow that the conveyance must be fraudulent. If a man, entirely unincumbered, has a right to make a voluntary settlement of a part of his estate, it is difficult to say how much of it he may settle. In Stephens v. Olive, 2 Bro. Ch. R. 90, the whole real estate appears to have been settled, subject to a mortgage of a debt of £500; but that settlement was sustained. * * A man who makes such a conveyance necessarily impairs his credit (unless he has large personal property, as in this case); and, if openly done, warns those with whom he deals not to trust him too far; but this is not fraud.” Nor is the possession by the husband after the conveyance a badge of fraud. Schouler D. R. 283, note; 2 Perry on Trusts p. 277, § 678. I can see no evidence of fraud in this case. On the contrary, I think the circumstances disclosed by the evidence in the record show that Beuben Sayers, in executing the conveyance to his wife, of the 15th of November 1855, acted fairly and in good faith, and that there is no ground even for the suspicion of fraud.
The question now arises as to the validity of the deed to vest the real estate in Eleanor A. Sayers. It is a conveyance directly from a husband to his wife. It seems to be well settled that at law it has no validity, *373 because of the legal unity between husband and wife, the latter having no legal existence separate from her husband. As a consequence of this old common law doctrine, it is held by courts of law, that a deed directly from a husband to his wife must be inoperative and void; whilst if it had been made to a third person, for the benefit and separate use of the wife, the same courts hold that it is valid, and vests the beneficial estate in the wife. Equity, which looks more to the substance than the form, holds that the conveyance directly from the husband to the wife, if fair and free from the taint of fraud, is just as valid as-if the conveyance had been made to a trustee for the benefit of the wife. Equity will interpose a trustee to hold the estate for the benefit of the wife, or will treat the husband as a trustee for the wife, and will give the same effect to the conveyance, as if it had been made to a third person, for the sole and separate use of the wife.
Huber v. Huber’s adm’ors, 10 Ohio R. 371; Wallingsford v. Allen, 10 Peters R. 583; 24 Verm. R. 375; Dewing v. William,s, 26 Conn. R. 226; Putnam v. Bickwell, 18 Wis. R. 333; Sims v. Pickets, 9 Amer. Rep. 681; Shepard v. Shepard, 7 John. C. R. 57; Jones & wife v. Obenchain & als., 10 Gratt. 259. These cases fully sustain the doctrine as I have laid it down. In Doming v. Williams, 26 Conn., supra, the judge, in a very lucid opinion, says the cases found in the books from Slanning v. Style, decided in 1734, 3 P. W’ms 334, to the present time, sustain the principle, “that so far as the form and substance of the gift or alienation are important, that which would be good if made to a third person, is good in a court of equity if made by the husband to his wife.” That is sensible.
In the same case it was held, that in order to give the wife a separate use, words indicating such inten *374 tion are necessary in a conveyance from a stranger to the wife; but that it seemed to be “well settled that they are not necessary in a conveyance direct from the husband to the wife. The law attaches to absolute deeds, and transfers (says the court) a full alienation of the entire interest or property, so far as the alienation is permitted by the principles of law and equity.” Whitten v. Whitten, 3 Cush. R. 191, supports the same doctrine. It is treated as the settled doctrine; and, according to this authority, the deed from Reuben Sayers to his wife, -if -absolute, vested in his wife a separate estate, though such words are not used; and consequently he is not entitled to curtesy.
As a corollary of the foregoing, whilst as held by the courts of law, the deed of the 15th of November 1855 passed nothing from Reuben Sayers to his wife, and divested from him nothing of his title; by the rules and principles of equity, if the deed, according to its intent and effect, is absolute, it immediately divested the grantor of all title in his own right, legal or equitable, in the property conveyed, and vested an absolute separate estate in it in his wife. The legal, as well as the equitable estate, was vested in her by the terms of the deed, which could not take effect by reason of the legal fiction, that the wife and the husband are one, and she can have no legal existence separate from him; but equity regards the title of the husband in his own right as having passed from him to the wife, vesting in her a separate estate, in which the husband has no interest in his own right, legal or equitable. And courts of equity will exert their powers when necessary, and in a proper care, to give full effect to such conveyances. In order to give the deed of conveyance in question such effect, nothing further is necessary to be done by the grantor. He signed, sealed and de *375 livered the deed, and acknowledged it to be his act and deed in the mode prescribed by law; and the same has been registered according to the requirements of the statute. Nothing farther is necessary to be done by the husband, or can be done by him, in order to complete and perfect the conveyance. As done, upon the principles and doctrines of equity, the title of the husband is divested, and is vested in the wife, and that, I take it, without any action by a court of equity. Thus, though there had been no aetiou by the court of equity, an absolute separate estate was vested in Eleanor A. Sayers, upon the principles and doctrines of equity, immediately upon the execution of said conveyance. She remained invested with such separate estate until her death, when it descended to her children, just as if it had been an estate recognized at law. And now when it is sought to divest that estate from them, and subject it to the payment of the subsequent debts of the grantor, though courts of law will not recognize the conveyancemade to her, under whom they claim, it being a valid conveyance upon the principles of equity, it is competent for them to invoke the aid of equity, to give effect to the deed, and to protect them in their rights; and it is proper for them to invoke that protection in this suit, which seeks, by a court of equity, to subject their property to the payment of the grantor’s debts.
It was contended for the appellees, that the appellants were not properly before the court, and ought not to be allowed to assert their claims in this suit: or at least they could only do so, by a cross-bill. James Deaderick and his wife were made defendants by the amended bill, and the other appellants were made defendants upon their petitions, and had leave to file their answers, without objection by the appellees. I *376 am not sure that they were not necessary parties. They were in the actual enjoyment of the subject matter of the suit, and had an interest in it which was likely to be defeated or diminished by the plaintiffs’ claim; and bad an immediate interest in resisting the plaintiffs’ demand; and all persons who have such immediate interests are necessary parties to the suit. I Daniel’s Chy. Plead. & Prac., chap. 5, § 2, p. 246. It is the constant aim of courts of equity to do complete justice, by deciding upon and settling the rights of all persons interested in the subject matter of the suit, that further litigation may be prevented. And courts of equity delight to do justice, and not by halves. Stor. Equ. Plead., § 72. If it is true, as contended by the learned counsel, the plaintiffs might have proceeded to enforce their judgment liens, ignoring the appellants’ claim of title, subjected the property to sale, and proceeded by ejectment at law to dispossess the appellants, in which they must have succeeded, as the appellants could not have asserted their title in a court of law, and that the decree in this suit for the sale would not be binding on them if they were not parties, the appellants would thereby have been driven to the necessity of bringing a suit in equity to injoin the plaintiffs, and to assert their rights, which might have been litigated and determined in this suit. Why thus multiply suits? The plaintiffs were proceeding in a court of equity to enforce their judgment liens against lands w’hich they knew the appellants claimed to be their property, and denied to be chargeable with their judgments; that their defence could only be made in a court of equity, and that complete justice could be done in this suit, by deciding upon and settling the rights of all persons interested in the subject matter of the suit. It seems to me they ought to have been made *377 parties. How could there have been a fair sale of the lands to satisfy their judgments until the rights of the appellants were determined? They would have of course asserted their claim, and forbid the sale, and who would have felt safe in purchasing uutil the validity of their claim was determined? It was necessary to make them parties in order to remove a cloud which rested on the title, before a decree for the sale. I am inclined to think they were necessary parties in this suit. But it is not necessary to decide that question now, as they have been made parties, and in many cases a person may be made a party though he is not an indispensable party. Story’s Eq. Plead., § 158. In this case they were made parties on their motion, and I think properly so. And although it perhaps would have been more proper to have asserted their claim by cross-bill, I think their claim was a defence to the proceeding by the plaintiffs, and might be made by answer, in which the affirmative matter of defence was set out. But their petition might be treated as a cross-bill. It seems that they were properly before the court, and that the case was before the court, by admitting them parties defendant, in such form as to enable it to decide and settle the rights of all parties interested in the subject, and to do complete justice, and prevent a multiplicity of suits.
But it is contended for the appellees, that a court of equity will not give effect to a conveyance from husband to wife against creditors, though subsequent to the conveyance, upon any consideration which is not valuable. I can perceive no good reason why subsequent creditors should have any superior equity to that of the heir of the grantor, where he had given the property to a second wife, who was not the mother of the heir claiming it. If his deed of divested *378 him of the lands and vested them in another, and the-transaction was open and fair and untainted' with fraud, the property ceased to be his from the date of' the conveyance, and became the property of his wife, to her separate use; and I cannot perceive what equity his subsequent creditors would have, who credited him upon the faith of his own property, to charge his wife’s property with the payment of his debts. “It is true,” Mr. Justice Story says, “that in regard to the defective execution of powers, &c., courts of equity do not always interfere and grant relief, but grant it only in favor of persons in a moral sense entitled to the same, and viewed with peculiar favor, and where there are no opposing equities on the other side.” (1 Stor. Eq. Juris. § 95, cited by appellee’s counsel in brief.) Here the author says, the relief will be granted in favor of a person who is in a moral sense entitled to the same; and none are more so than a wife or children. But the author adds, “where there are no opposing equities on the other side.” I have said that I cannot perceive the ground of an equity in the subsequent creditor to charge the wife’s separate estate-with the debt of her husband, for which he obtained credit upon the faith of his own property. I think the circumstances of this case, which I have already detailed, are peculiarly strong against any such claim on the part of these creditors of the husband. Having by their forbearance lost their debts, in consequence of their debtor’s losing his property by the-result of the war, upon the faith of which their debts were contracted, it seems to me they would have no-equity to charge the property of the wife, which was openly and fairly settled upon her as her separate estate long before those debts were contracted. So-that in this case there are no opposing equities; and. *379 the authority cited seems to be strongly in support of the interference of a court of equity to give the aid sought.
But will a court of equity give eifect to the conveyance which is founded not upon valuable, but only meritorious consideration, in favor of a wife or children? IJpon this point I will refer to Stor. Eq. Jur., § 169, where ho expressly states the assistance will be given to a person standing upon a valuable or meritorious consideration. The authorities upon this point are somewhat conflicting, and as this opinion is already too much extended, I will not undertake to review them, but will content myself with a reference to the opinion of Allen, Judge, in Jones & wife v. Obenchain als., 10 Gratt. 261, in which he reviews the decisions on the subject. It was held by Judge Allen, and all the judges concurred in his opinion—that where there was a meritorious consideration, meaning thereby a provision for a wife or child, equity would enforce a defective conveyance. In support of that opinion he cites Shepard, v. Shepard, 7 John. Ch. R.; and Kekewich v. Manning, 12 Eng. L. & E. R. 120. He refers to the opinions of Lord Thurlow and Lord Eldon as favoring the doctrine, and the remarks of Brooke, J., in Darlington v. McCoole, 1 Leigh 36. He cites two decisions by the Court of Appeals of Kentucky, and the remarks of Chief Justice Gibson in Dennison v. Gochring, 4 Barr Pa. R. 175. He also cites and relies on the opinion of Lord Chancellor Sugden in Ellis v. Nimmo; and reviews the decisions, which it is said overrules that decision of the Lord Chancellor, which he was of opinion were decided on other grounds. But suppose he had regarded those subsequent cases as overruling hTimmo & Ellis, would it have changed his opinion and the decision of this court in Jones v. Obenchain? I can *380 hardly think it would. The opinion of Lord Chancellor Sugden was not, nor were the decisions of the courts of Great Britain, authority with this court; but k°r(l Chancellor’s opinion was regarded with the consideration that its intrinsic merit and the respect due to his great learning entitled it to receive. And the cases which are said to have overruled him were before this court and reviewed by Judge Allen, and did not change the decision. I must regard that case therefore as a decision of this question by the Court of Appeals of Virginia in which all the judges concurred, and am not disposed to disturb it, whether Nimmo & Ellis has been overruled or not. And I find it is sustained by other American decisions, which are entitled to very great respect. I will only refer to a recent decision of the Court of Appeals of Indiana, in Sims v. Rickets, supra, which I think is in point.
It remains now only to inquire whether the deed in question is a real bona fide conveyance, and whether it is absolute or only conditional. We have seen that it was fair and unassailable even upon the suspicion of fraud as to the creditors of the grantor or other persons: was it a real and bona fide conveyance as between the husband and wife ? The terms of the deed, and the deliberation and solemnity of the act, the lapse of time for reflection from the writing of the deed until its acknowledgment and recordation, the continued acquiescence of the husband during the lifetime of his wife, for a period of nearly ten years after the execution of the deed, without even an attempt to obtain a release from her (which may be regarded as a confirmation of the conveyance to her), leave no room for doubt that the transaction was real and bona fide between them, and was intended to divest the grantor •of his title, and to vest it in his wife, according to the *381 terms of the deed. Is the conveyance absolute, or only conditional ?
This inquiry can only be answered by recurring to the instrument itself. It recites, “that whereas the said Reuben Sayers, intending shortly to visit the western country, and knowing the uncertainty of life, and to provide a permanent home and a future residence for his family, in ease he should not be permitted to return in safety home, and seeking to provide against confusion at all events, now this indenture witnesseth, that for and in consideration of the premises, and for the natural love and affection he has for his wife, the said Reuben Sayers doth grant unto the said Eleanor Ann Sayers his entire real estate lying in the county of Pulaski, his present residence, containing seven hundred acres, more or less. Witness the following signature and seal.” Signed, “ Reuben Sayers. Seal.”
There are two considerations set out in this deed, which moved the grantor to its execution: first, the providing a permanent home and future residence for his family; second, the love and affection he had for his wife.
Let it he conceded that one consideration of the conveyance was to provide a home for his family in case he did not safely return from the western country, which he expected shortly to visit. If he did return safely, then the conveyance was unnecessary to provide a home for his family on that contingency. But when he executed the deed he did not know that it would so happen, and in consideration of the uncertainty of his safe-return he makes an absolute conveyance to his wife. It is not a conveyance to take effect only upon condition that he does not safely return. But the contingency that he may not return is the *382 consideration which moves him to make the conveyance. Is that a conditional conveyance? I think not. The title has passed from him by his own act, upon a consideration which is in part contingent. And the contingency not happening the deed is not void; for it was not made to depend upon the happening of that contingency. It was just because of the uncertainty, the possibility that it might happen, he made an absolute conveyance to his wife.
But the consideration of the conveyance was not merely to provide a home for his family in case he had not a safe return. If he had stopped then it might have been so understood. But seeking to remove all confusion (uncertainty) on that point, he adds, “ and” “at all events.” That is, as I understand it to comprehend, whether he visited the western country and was not permitted safely to return or not—whether he lived or died, “at all events” he would make the conveyance. And his indenture witnessed that for and in consideration of the premises, and for the love and affection he had for his wife, he granted to her the land in controversy. This latter was a sufficient consideration to support the deed, even if the contingent consideration had failed. Skipwith v. Cabell, 20 Gratt. How could he claim a defeasance? I think it is an absolute conveyance, and not conditional. Upon the whole I am of opinion to reverse the decree of the court below, and to enter here such decree as ought to have been entered by the Circuit court, reversing the decree of the County court, and dismissing the plaintiffs’ bill with costs.
The other judges concurred in the opinion of Anderson J.
The decree was as follows:
*383 This day came again the parties by their counsel, •and the court having maturely considered the transcript of the record of the said decree and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said Circuit court erred in affirming the said decree of the said County court, instead of reversing the same and dismissing the bill in this cause, as it should have done. Therefore, it is decreed and ordered, that for the said error the said decree of the said Circuit court be reversed and.annulled, and that the appellees pay to the appellants their costs by them about the prosecution of their appeal here expended: and this court proceeding to render such decree in the premises as the Circuit court ought to have rendered, it is further decreed and ordered, that the said decree of the said County court be also reversed and annulled, and that the appellees pay to the appellants their costs by them in this cause expended as well in the said County court as in the said Circuit court.
Decree Eeversed.