JACKSON, . . . . . . . . . . . . . APRIL TERM, 1877.

MERRIMAN, Adm'r, *v.* JOHN CANNOVAN *et al.*

1. GARNISHMENT BILL. *Guardian and ward. Married Women. Bills and notes.* A garnishee may set-off against a debt due by him, notes taken by his guardian, a *feme covert*, payable to her, as guardian, for moneys belonging to him, they having come to his possession upon majority.

2. SAME. *Same. Statute of limitations.* When the statute operates on the remedy it must be pleaded. An *ore tenus* defense is not admissible; if the notes were barred by the statute which it was not pleaded, the set-off will be allowed.

Case cited : Owen's heirs *v.* Stubblefield, 10 Yer., 119.

3. SAME. *Same. Trusts.* When a party borrows money from a trustee, without security, it is a breach of the trust, of which he has notice, and thereby becomes a quasi trustee himself, and is estopped from pleading the statute of limitations against the recovery of such a debt.

Case cited: Moffitt *v.* McDonald, 11 Hum., 457.

FROM SHELBY.

Appeal from the Chancery Court. R. J. MORGAN, Chancellor.

S. P. WALKER for Merriman.

C. W. METCALF for Cannovan.

L. D. McKISSICK for Cocke.

SNEED, J., delivered the opinion of the court.

The complainant, as administrator, recovered a judg-

ment at law against the defendant Cannovan, for $4,365.65, upon which an execution was issued and returned *nulla bona*. He thereupon filed this bill for the purpose, among others, of subjecting the indebtedness of defendant, Thomas H. Cocke, to Cannovan to the satisfaction of the said judgment. The defendant Cocke is regularly made a party defendant to the bill, his indebtedness to Cannovan is attached, and he is called upon to discover his said indebtedness. His answer discloses an indebtedness to Cannovan by open account in the sum of about seventeen hundred dollars; but he discovers also an indebtedness on the part of Cannovan to himself in two notes of $1,000 each, executed by Cannovan to the guardian of said respondent, and demands that the same be set-off against his said indebtedness to Cannovan. The original bill in the cause was filed on the 24th October, 1866. The notes upon which the respondent's demand of set-off is predicated, were executed to Mrs. Isabella M. Houston, a *feme covert*, the grandmother and with her husband guardian of the respondent, and as the proof abundantly shows, were given for borrowed money of the trust fund in her hands which she loaned to Cannovan, who had full notice that the moneys so borrowed by him, were of the said trust fund and the property of the respondent. The said Isabella M. Houston became discovert by the death of her husband in 1863, and upon the respondent's attaining his majority in 1866, the notes were turned over to him by her as his property. These notes were not under seal, and were dated respectively the first of January,

1855 and the first of January, 1858, the first falling due the first of January, 1858, and the second the first of January, 1859. The answer of the respondent Cocke was filed 11th June, 1867. Afterwards the complainant filed an amended bill, and the defendant Connovan a supplemental answer, and neither party resorted to the statute of limitation as a defense against the notes; nor is the statute invoked in any other form of written pleading. It is stated here in argument that the statute was relied on in argument below by oral plea. The chancellor gave the complainant a decree against the respondent Cocke for the amount of his indebtedness to Cannovan, but refused to allow the set-off upon the ground that the notes were barred by the statute of limitations. The respondent Cocke has appealed, and the only question now before us is, as to the application of the statute of limitations under the facts of the case. We are constrained to differ with the Chancellor as to his conclusion in this case. In the view we have taken of the case it is not necessary to consider the argument submitted as to the operation of the statute of limitations upon the notes while in the hands of the payee, Mrs. Houston, and before they were delivered to their real owner, the respondent.

A very plausible if not conclusive argument against the operation of the statute might be predicated upon the doctrine of the law applicable to the relation of husband and wife, upon the peculiar state of facts under which these notes were held by the payee, Mrs. Houston, before and after she became discovert. If

that theory be the true one,. then the notes even in the hands of Mrs. Houston would not have been barred at the time the respondent's right accrued. And many respectable authorities may be cited in support of this view, which we do not, however, propose to elaborate, as another question must be decisive of the case. Upon this question, without resting this. adjudication upon it, we content ourselves with a reference to some of the authorities; 4 Dana R., 333; 9 B. Mon., 365; 2 Mauls & Selm, 396; 5 Wheat., 138; 3 Stewart, 375; 12 Ves., 497; 17 Ark., 154; 10 Ala., 682; 6 Mees & Wels., 423; 10 Bosw., 314; 1 Rawl Rep., 455; Borst v. Spelman, 4 N. Y. Rep., 284; 16 Mass., 483.

In one of these cases, it is said that where an obligation or contract is taken to the husband and wife, or to the wife alone, with the assent of the husband, the action survives to the wife, who is entitled to the proceeds as against the heirs and representatives of the husband. In such a case the form of the security implies a design by the husband to benefit the wife, and the law will give effect to this intention when the interest of creditors is not affected. Indeed, an agreement with a *feme covert* and a promise to her personally, raises the presumption that she is the meritorious cause of such agreement, and it will survive to her. This is held to be the rule at law as well as in equity. Borst v. Spelman, 4 N. Y. Rep., 284; Tyler Inf. and Cov., 384. But we do not care to pursue this doctrine as applicable to this case under

the hypothesis that the notes in controversy indicate a conversion of the trust fund.

Nor is it necessary to discuss the question whether the statute of limitations could be available in this case at all, without being in some manner invoked in the written pleading. It has been regarded, however, at least since the case of *Maury* v. *Lewis*, 10 Yer., 119, as the law, that in a case like this, where the statute operates on the remedy only, it must be pleaded or the party cannot avail himself of it. The answer, says the court in that case, does not rely upon the statute of limitations, and therefore the defendant cannot now insist upon it. The case of *Kegler* v. *Miles*, Mart. & Yer., has no application here. This is not a suit for specific property, the possession of which confers a title. In a case like this the statute operates only on the remedy; and in such a case, says Judge Green, according to all the books, it must be pleaded. The case of *Owen's heirs* v. *Stubblefield*, decided at Sparta in 1833, was like this. The court there held that the parties could not have the benefit of the statute of limitations because they had not relied upon it in their answers. 10 Yer., 119.

But apart from all these considerations, there are strong equities growing out of the peculiar facts of this case, which in a court of conscience should brand this irregular and anomalous *ore tenus* defense of the statute of limitations as one not to be favored, if they do not indeed operate as an effectual estoppel, in the view of a court of equity. It appears that the account of Cannovan against Cocke, sought to be subjected to the

complainant's debt, was for moneys and merchandize furnished the respondent Cocke by Cannovan, when the former was a minor—to many of which items the minority of the respondent would have interposed a valid defense, not being for necessaries, and that respondent, after his majority, affirmed and ratified the voidable contract upon the express condition that these notes were to be taken into the settlement. The defendant Cannovan expressly acknowledged that he owed the notes and promised to pay them and to bring them into the settlement. There seems to be some doubt upon the proof whether he did not annex the further condition that his claim for improvements upon certain leased property of the respondent was also to be brought into the settlement; but it is sufficient for our purpose, in illustrating the equities of the parties, to know that it is abundantly shown that the respondent would not have ratified the voidable contract upon which he is now sued, but for the express understanding that upon a settlement these notes were to be recognized as valid and subsisting debts due to the respondent from the defendant Cannovan.

The proof is in conflict as to the precise character of Connovan's recognition of the notes; some of the testimony showing that it was conditional upon a settlement of all matters between the parties; and other portions of it to the effect that he admitted the justice of the notes, and promised absolutely and without condition to pay them; only stating that he could not pay them then for want of money. While in this state of the proof, therefore, we do not undertake to

adjudge that the promise was of that character which would revive the debt if barred, yet we cannot, under such a state of facts, "strain the timbers of the law" so far as to favor an *ore tenus* defense of this kind, however much we might be disposed in a proper case, to relax the stern rules of pleading upon this subject.

But we rest our decision of the cause upon another question. We have seen that these notes were given for the loan of the trust funds of the respondent in the hands of his guardians; and it appears beyond all controversy that the defendant Cannovan was well advised of this fact. Under such circumstances a court of equity will not tolerate the statute of limitations as a defense against the recovery of the money. It is matter of public statutory law, which the defendant Cannovan was bound to know, that the lending of trust moneys upon no security at all as in this case, was a breach of the trust. And by borrowing this respondent's money with a full knowledge of the fact that no security was required or given, the defendant Cannovan, upon well-established principles, made himself a *quasi* trustee and subject to all the burthens and liabilities of that relation. Thus, it is said, if a trustee loans the trust fund in breach of the trust, and the borrower has notice of the trust and the breach, he becomes a *quasi* trustee, and he cannot separate the loan from the trust, nor insist that the statute of limitations, which bars a loan as a loan, also bars the remedy for the trust fund in his hands. Perry on Trusts, § 832. The *cestui que trust* may follow the fund into any new investment in which it may be

clearly identified. *Id.*, 836. And if it be followed into the hands of one who receives it by collusion, *or* with express notice of the trust, he cannot plead the statute of limitations, for the reason, that he becomes himself a trustee. *Id.*, §§ 840, 859; *Earnest* v. *Croysdill*, 6 Jur., 740; *Rolfe* v. *Gregory*, 11 Jur., 97; 3 How., 333; 11 Hum., 457; 3 Ned. Eq., 569; 7 Allen, 499. We think these principles are sound and have no hesitation in applying them here as decisive of the equities of these parties upon the case presented.

The result is, that the Chancellor's decree must be modified so as to give the respondent the benefit of his set-off.

Judge FREEMAN does not concur in this opinion, so far as it precludes the plea of the statute of limitations on the ground of the trust relation of Cannovan to the fund in controversy; but is inclined to the opinion that he would be precluded from relying on the statute upon other grounds.