AMOS D. BALL *et al. vs.* SIMON R. BALL *et al.*

NEWPORT—MAY 6, 1898.

PRESENT: Stiness, Tillinghast and Rogers, JJ.

A deed by a man directly to his wife, under the statutes in force in 1849, was void at law; but while the legal title remained in the husband such deed may be a good conveyance of an equitable estate when made for a good consideration, or even as a gift if not in fraud of creditors.

A husband has an estate for life, as tenant by curtesy, in the equitable estate of his wife unless a contrary intent appears in the instrument creating the wife's estate.

An estoppel does not arise when the truth appears; therefore the rule that one who has given a warranty deed is estopped by his covenants of title to set up an after-acquired title does not apply to prevent an estate by curtesy in a husband who had made such a conveyance to his wife and survived her.

Such a deed does not convey the husband's tenancy by the curtesy unless it be so expressed, as that estate does not arise until the wife becomes seized.

The heirs of the wife claiming title to the granted premises are not guilty of laches by waiting until the death of the husband before proceeding to enforce their claim.

A bill is not multifarious where the complainants hold title in various ways, if the remedy sought grows out of one transaction, and the bill seeks to establish one general claim of right which affects all the respondents.

BILL IN EQUITY to establish a trust, and for a conveyance. Heard on demurrer to the bill alleging adverse possession, laches, and multifariousness.

STINESS, J.    The bill sets out that Simon R. Ball, late of New Shoreham, deceased, on February 3, 1849, was seized in fee simple of real estate in said town, which he then attempted to convey directly to his wife, Celia Ann Ball, by a warranty deed, which is now lost, for a valuable consideration.    Celia Ann Ball died May 26, 1851, and the complain-

ants are her only heirs at law.  Simon R. Ball died December 20, 1896, leaving the complainants and the respondents, except the town of New Shoreham, as his heirs at law, they being children by a second marriage.  The bill prays that the respondents may be decreed to hold the title, which came to them from said Simon R. Ball, in trust for the complainants, and also prays for a conveyance.

There can be no doubt that a deed by a man directly to his wife, as our laws were in 1849, was void at law.  The legal title, therefore, remained in Simon R. Ball after the alleged deed to his wife.  But such deeds, although inoperative to carry the legal title, have, nevertheless, been held to be good for the purpose of conveying an equitable estate, when made for a good consideration, or even as a gift, if not in fraud of creditors.  1 Jones on Conveyancing, § 45.

Applying this familiar rule to this bill, it sets out that Simon R. Ball conveyed the equitable estate to his wife and held the legal title in himself; that the equitable title descended to the complainants and the legal title to his children, subject to his conveyance of a part to the town of New Shoreham for a highway; and, consequently, the equitable owners are entitled to have the legal estate, held by the respondents, conveyed to them to complete their title.  Under the rule which we have stated this would clearly be a good bill.

But the respondents claim, on demurrer to the bill, that the alleged deed carried the entire estate to the wife in 1849, including even the husband's tenancy by curtesy after his wife became seized of it, and hence that the bill shows an adverse possession since that time or such laches as will bar their bill on demurrer.  The bill does not allege that Simon R. Ball, Sr., occupied the premises after the death of his wife, although that fact seems to be implied, and the argument of the case has proceeded upon the assumption of such occupation and the claim that it was adverse, because the husband had no tenancy by curtesy.  The principal question, therefore, is whether the husband had a tenancy by curtesy in the land conveyed to his wife.

In *Nightingale* v. *Hidden*, 7 R. I. 115, and *Tillinghast* v. *Coggeshall*, 7 R. I. 383, it was held that a husband had an estate for life in the equitable estate of his wife, except when a contrary intent should appear.

In *Robie* v. *Chapman*, 59 N. H. 41, it was held that the husband was a tenant by the curtesy of land which he had given to his wife, and hence that his interest could be taken on execution. This court has held that, while the interest was salable and assignable, *Briggs* v. *Titus*, 13 R. I. 136, it could not be attached during the life of the wife, because the purpose of the statute, in regard to the property of married women, was to secure it to them free from molestation by the creditors of the husband. *Greenwich Bank* v. *Hall*, 11 R. I. 124.

Where a husband conveyed in trust for the sole and separate use of his wife, it was held that he was entitled at her death to hold the property as tenant by the curtesy. *Frazer* v. *Hightown*, 68 Tenn. 94. So in *Morgan* v. *Morgan*, 5 Madd. 408, the opinion was that a husband is tenant by curtesy in the equitable estate of his wife, because equity follows the law. *Cushing* v. *Blake*, 29 N. J. Eq. 399, also held that in an equitable estate, conveyed by a husband in trust for his wife, curtesy is not excepted, unless it be by words which leave no doubt of intention. To the same effect is *Pool* v. *Blakie*, 53 Ill. 495, where such tenancy was denied, because the deed from a father to his daughter expressly excluded all rights arising from present or future coverture.

The cases relied on by the respondents are not in point. *Sayers* v. *Wall*, 26 Gratt. 354, was a creditor's bill to subject land, which a man had conveyed directly to his wife, to the payment of his debts. The court held that the deed vested the entire equitable estate in the wife, and it does not appear that the question of a tenancy by curtesy was raised.

*Whitten* v. *Whitten*, 3 Cush. 191, was a question of resulting trust by reason of the purchase of land with the husband's money, and not a question of tenancy by the curtesy.

*Deming* v. *Williams*, 26 Conn. 226, related to personal property given to the wife.

These cases simply uphold the validity in equity of a transfer of property which would be void at law, and nothing more.

The principle that one who has given a warranty deed is estopped by his covenants of title to set up an after-acquired title does not apply. *McCusker* v. *McEvey*, 9 R. I. 528. It is a fundamental rule that an estoppel does not arise where the truth appears. When, therefore, a husband conveys an estate to his wife without reference to his tenancy by curtesy, it is evident that it does not convey that estate, because he does not then have it. The estate by curtesy does not arise until the wife becomes seized, and then it attaches by operation of law. This is not inconsistent with the husband's conveyance or covenant to his wife, even assuming such a covenant to be valid.

The right of the husband to hold the estate as tenant by curtesy after the death of his wife being established, the bill shows no cause of demurrer upon this ground.

The bill is not demurrable for laches. In *Chase* v. *Chase*, 20 R. I. 202, we said that laches is not mere delay, but delay that works disadvantage to another. The respondents are in no worse condition now than they have been, except that it is suggested that the death of Simon R. Ball, Sr., deprives them of his testimony. But it equally deprives the complainants of his testimony. The burden is on the complainants to prove the deed and, with this fact to be established, the loss, if any, is theirs; for we cannot assume that the father would deny his own act. In *Chase* v. *Chase*, *supra*, we applied the principle of laches because the heirs, by delaying their suit to set aside a deed until after the death of Mr. and Mrs. Chase, to whom a joint lease for life had been given, had allowed the respondents to spend sixteen years in the care of the old people, which was the consideration of the deed, known to the complainants, and thus they had stood by until the respondents had performed their part of the contract and could not be put back into the condition which would have been possible by seasonable action. But in this case there has been no change of condition. The complainants

could not become possessed of the property until after the termination of the life tenancy by their father, and the respondents have done nothing by which they suffer disadvantage. Assuming the statements of the bill to be true, as we must upon demurrer, the complainants simply have a harder task to prove the deed, after the death of their father, than before.

The bill is also demurred to for multifariousness. It seeks to declare a trust in their favor upon the legal title held by the respondents, however acquired. The parties may hold in different ways, but the remedy sought grows out of one transaction, and the bill seeks to establish one general claim of right, which affects all the respondents. *Chafee* v. *Quidnick Co.*, 13 R. I. 442.

Our conclusion is that the demurrer must be overruled.

*George H. Huddy*, for complainants.

*Christopher E. Champlin*, for respondents.