## Staunton.

### WALKER V. GRAYSON & ALS.

#### OCTOBER 2d, 1889.

1. VENDOR AND VENDEE—*Sales—Case at bar*—Mrs. W. permitted M. to buy, at a sale under a decree, their deceased father's land for much less than its value, on condition he settled part on her. After buying it, he gave her possession of part. After that, he agreed to hold the land in part-nership with others. Later, he sold a portion, including what she pos-sessed, receiving, as part payment, another tract, whereof he gave her possession, agreeing to convey it to her, in consideration of money he owed her and her balance of all interest in the former tract. *Held,* she was a purchaser of the latter tract, and her title is paramount to the interest of M.'s partners and to the dower right of his widow.

2. INFANTS—*Attorney—Consent decree.*—Attorney, counsel for parties having interests adverse to those of infant parties, cannot be allowed to con-sent to a decree on behalf of such infants.

3. IDEM—*Depositions—Guardian ad litem.*—Where guardian *ad litem* had no notice, depositions taken in the cause cannot be read against the infant parties.

Appeal from two decrees of circuit court of Page county, rendered September 2, 1885, and April 22, 1886, respectively, in the chancery suit wherein B. F. Grayson and others are complainants, and W. H. Miller's administrators and others are defendants. In this suit Mrs. Mary E. Walker and her husband, J. C. Walker, filed a petition claiming title to part of the land included in the litigation, under a purchase made by her of W. H. Miller in his lifetime, and whereof he had put her in possession. The circuit court decreed that the petitioners were not entitled to the relief asked for. From the decree the Walkers appealed. Opinion states the case.

*George R. Calvert,* for the appellants.

*H. C. Allen, J. G. Newman, Mr. Parks,* and *E. T. Booten,* for the appellees.

HINTON, J., delivered the opinion of the court.

The chancery suit of *Grayson and als.* v. *W. H. Miller's Adm'r and als.,* was heard along with two other cases, the records of which are not before us. From the record of the first-named cause, however, it appears that many years ago Jacob Miller died intestate, leaving as his heirs his only children, W. H. Miller and Mary E. Walker, the present appellant. At the time of his death Jacob Miller was considerably indebted—exactly to what amount is not shown by the record; but as it was stated in argument to be about $8,000, and not controverted, we may infer that that sum is not far from the correct amount. His estate consisted mainly of valuable real estate, a part of which, viz., 654⅝ acres, at the least, was situate in the county of Rockingham, and is what is known in the record as the "Jacob Miller farm." Shortly after the death of the said Miller a suit in equity, under the name and style of *Blose's Ex'ors* v. *Miller's Adm'r,* was instituted to subject the real estate of the intestate to the payment of his debts, and on the 17th of February, 1879, the "Jacob Miller farm" was sold pursuant to a decree of the circuit court of Rockingham county entered in said cause, when the said W. H. Miller became the purchaser at the price of $15 per acre, aggregating $9,811 37, a sum which, it would seem from the sales that have already been made of a large part of the property, was about two thirds the value of said property. And the record shows beyond question that he was only enabled to purchase the property for this sum by representing to various persons who were present for the purpose of bidding, that he was buying this property for the primary

purpose of securing a home for his sister, the appellant, Mrs. Mary E. Walker. In pursuance of this real or pretended purpose, W. H. Miller immediately had one hundred or more acres of said farm laid off and surveyed for Mrs. Walker, put her in possession of the same, with all the buildings thereon, and she remained in peaceable and undisturbed possession thereof, enjoying the profits arising therefrom, for a year or more, and until her removal to the Coffman farm, in the county of Page, in April, 1880.

On the 6th day of March, 1880, one B. F. Coffman bought of W. H. Miller 441 acres of the said "Jacob Miller farm" at $27 50 per acre, which included the 100 acres which he (Miller) had set apart for his sister, and of which he had given her possession, and gave him in payment a tract of 157 acres of land in the county of Page known as the "Coffman farm," and valued at $5,000, and his bonds for the balance.

The record further shows that the mother of Mrs. Walker and W. H. Miller was at her death seized of sixty-two acres of land as her separate estate; that it descended to W. H. Miller and Mary E. Walker jointly; that Miller sold this land to one W. J. Kite at $25 per acre, Mrs. Walker uniting in the deed; that Miller received the entire purchase money, but never paid any portion of his sister's share either to her or her husband; that, instead of paying it over to his sister, he executed, over his own signature and seal, on the 20th of March, 1880, a paper writing, in which, after reciting the above, he obligated himself to convey to her lands in the county of Page of the value of her said share.

In April, 1880, W. H. Miller removed his sister from the "Jacob Miller farm" and placed her in possession of the "Coffman farm," of which she held open and undisputed possession until this suit was brought after the death of her brother; that W. H. Miller never received a deed for any of this real estate during his lifetime, and was therefore never able to make a deed to Mrs. Walker. In the afternoon of the day on which

W. H. Miller died, B. F. Grayson, Sr., called at the house of the dying man and had an interview with him. There were present in the little fourteen by sixteen room, where the sick man was lying, or at the only door to this room, and within hearing distance, Mrs. Walker, Mrs. Miller, and the said B. F. Grayson, Sr. In that interview W. H. Miller said to his wife that he owed to B. F. Grayson, Sr., three hundred and some dollars, for which Grayson had nothing to show, and he wished her to see it paid, but not one word was said by either Grayson or W. H. Miller about the existence of any partnership as to the "Jacob Miller farm" or the "Coffman farm." This occurred in the month of November, 1881.

In March, 1882, the appellees, B. F. Grayson, Sr., B. F. Grayson, Jr., C. S. Grayson and E. T. Booten, trustee, filed their original bill, and, in March, 1883, an amended and supplemental bill, in which they aver that W. H. Miller had bought the "Jacob Miller farm" at $15 per acre; that W. H. Miller obtained from B. F. Grayson, Sr., B. F. Grayson, Jr., and C. S. Grayson the sum of $319 37, with which the cash payment was made, and that the said Graysons were to be full partners with said Miller in said purchase, and in proof thereof they filed with their bill a paper writing signed by said Miller. They then aver that, with their consent and approval, Miller sold to B. F. Coffman about 441 acres of said land for $27 50 per acre, taking from said Coffman a farm in Page county, valued at $5,000, in part payment for said land. And they pray that the purchase money due from said Coffman be collected; that the residue of the "Jacob Miller farm" and the whole of the Coffman farm may be sold, the purchase money due upon the purchase by W. H. Miller of the "Jacob Miller farm" be paid, and that the residue of the fund arising from said sales, and all rents and profits, be equally divided among B. F. Grayson, Sr., B. F. Grayson, Jr., C. S. Grayson, and the estate of W. H. Miller. To this bill F. C. V. Miller, the widow, and Wilber Miller and Baby Miller, the children of

W. H. Miller; E. J. Armstrong, adm'r of W. H. Miller; B. F. Coffman, W. J. Kite, B. Raines, Michael Long, Peter Long, Philip Long, M. L. B. Grayson, and Mary E. Grayson, and Fielding Raines are made defendants.

In September, 1884, John C. Walker and his wife, the appellant, Mary E. Walker, filed their petition in this suit, in which, after setting forth such of the foregoing facts as are pertinent to their case, they pray for such special and general relief as they may be entitled to.

Thereupon such proceedings were had that two decrees were rendered on the 26th of September, 1885, and 22d of April, 1886. By the first of these decrees it is, amongst other things, adjudged and declared " that B. F. Grayson, Sr., B. F. Grayson, Jr., C. S. Grayson and W. H. Miller were equal partners in the purchase of the Miller farm in the county of Rockingham, and by said purchase became joint owners thereof and equally entitled to all the profits arising from the rental, use or sales thereof, and that said four named parties are joint owners in the Coffman farm, in Page county, subject to the vendor's lien resting thereon, with like joint interest in all profits or income therefrom. That Mrs. F. V. C. Miller is not entitled to dower in said Miller and Coffman farms, as claimed in her petition, but only in W. H. Miller's interest therein—viz., in one fourth of the unsold part of the Miller farm and in one fourth of the remainder of the Coffman farm which would be left after paying the vendor's lien resting thereon; and that Walker and wife are not entitled to the relief asked for in their ' petition and bill of complaint,' but that W. H. Miller's estate is indebted to Mrs. Mary E. Walker in the sum of $775, with interest thereon from March 20th, 1880." The decree then goes on to direct a sale of the Coffman farm and the unsold part of the Miller farm, and releases John C. Walker and Mary E. Walker from all liability for rent or occupation of any of the lands covered by the decree.

In the second of these decrees the court overruled the exceptions of Walker and wife to the report of sale, confirms the sale of the Coffman farm and the sale of the unsold part of the Miller farm, and directs that, after various disbursements and payments therein provided for are made, the proceeds of the various land funds shall be treated as one common fund, and that the balance remaining after the reservation of enough to pay any further unprovided-for costs which might arise in the cause, should be divided into four equal parts and disbursed as follows: One fourth to B. F. Grayson, Sr., one fourth to E. T. Booten, trustee for B. F. Grayson, Jr., one fourth to C. S. Grayson, and one fourth—the part of W. H. Miller's estate—to be distributed in the manner indicated in the decree.

Now each of these decrees is erroneous in two fundamental particulars. They are so, first, in declaring and decreeing that the Coffman farm was partnership property, and, second, that Mrs. Miller was entitled to dower in her husband's one-fourth thereof, neither of which propositions is true. By the death of W. H. Miller the lips of J. C. Walker and his wife, Mary E. Walker, became sealed, and each of them was thereafter inhibited by the express words of the statute from testifying as to what was the agreement and understanding between Mary E. Walker and her brother, W. H. Miller. But the acts and declarations of that brother, taken in connection with the conduct of Walker and his wife, are fairly susceptible of but one construction, and that is that there was an agreement that if they would permit the "Jacob Miller farm"—or, as it is sometimes called, the "Miller farm"—to be bought by him at a greatly depreciated price, he would settle upon her at least one hundred acres of that farm, including the mansion-house, as a home.

When this agreement was made between these parties the real or pretended agreement of partnership between Miller

and the Graysons had no existence, for that agreement, if ever made, was not entered into until February 26, 1879—nine days after the sale was made.

To this agreement between the brother and sister, various parties who had come to the sale, may be said, in a certain sense, to have been parties, for, in order to enable W. H. Miller to effectuate and carry out this purpose, they, at his instance and request, deliberately refrained from bidding.

It is equally clear that for some reason not fully disclosed by the record, there was a subsequent agreement between W. H. Miller and Mrs. Mary E. Walker, by which he agreed, in consideration of the $775 which he owed her for her interest in the land descended from her mother, and her relinquishing her right to the 100 acres of the Miller farm, to convey to her the Coffman farm. And this was doubtless regarded by W. H. Miller as a good exchange, for by it he received in exchange for a farm only estimated by its former owner, B. F. Coffman, to be worth $5,000, the 100 acres of the Miller farm, including the mansion, which is estimated by those witnesses who value it at the least at $50 per acre, and by those who value it highest at $100 per acre, and $775 in money; and out of this $775 it is not improbable it was that W. H. Miller paid B. F. Coffman the $600 which Coffman in his answer says Miller paid him at the time he purchased the Coffman farm.

That Mrs. Mary E. Walker thus acquired the equitable title to the Coffman farm seems to us to be unquestionable, and that she gave a valuable consideration for it in the beginning of these transactions, by surrendering her rights in the enhanced price which the "Jacob Miller farm" would have brought if sold under ordinary circumstances, we regard as equally beyond doubt. Whether the consideration given in the first instance was full and adequate, is a matter of no importance. W. H. Miller certainly thought so, and in the exchange by which Mrs. Walker acquired the Coffman farm she must have sur-

rendered as much as Miller could possibly have lost by the first transaction.

Under these circumstances Mrs. Walker must be regarded in a court of equity as the purchaser and owner of the Coffman farm; nor can her title be in any wise affected by the alleged contract of partnership between W. H. Miller and the Graysons, for, if we assume, for the sake of the argument, that contract to be proved, it was not entered into until nine days after the sale, as we have seen, and could not affect Mrs. Walker, whose rights had been previously acquired, and who never knew of their pretensions until the claim was preferred after the death of her brother, the said W. H. Miller.

Now, from what has been said, it would seem that the circuit court erred, in holding that Mrs. Walker was not entitled to the Coffman farm, and in decreeing that Mrs. F. V. C. Miller was entitled to dower in part of said farm, and that said farm should be sold. It is argued, however, that the decree of September 26th, 1885, was a consent decree, and that we are precluded by this fact from looking into the merits. But in this they are mistaken. As a general rule, a decree or order made by consent of counsel is not the subject of appeal. 2 Daniel's Chancery Pl. and Pr. (4th American Ed.), 973; *Burton* v. *Brown's Ex'ors*, 95 U. S., 391; *Water Works Company* v. *Barrett*, 13 Otto. But this was in no sense a consent decree. Here the parties were not all *sui juris*, but some of them were infants, for whom no one was authorized to consent. It was admitted, however, by one of the counsel (Mr. Parks) at the bar, that he was counsel for the Graysons, Mrs. F. V. C. Miller, and her infant children in the circuit court, and as such counsel consented for the children. But, of course, no such thing as this can be countenanced. The interests of these infants are adverse to that of the Graysons and of their mother, and, under such circumstances, for the court to allow counsel to consent for infants would be in the highest degree improper and often destructive of their interests.

The court also erred in allowing the deposition of Peter Long to be read against these infants, it not appearing that their guardian *ad litem* had been served with notice. *Strayer v. Long*, 83 Va., 715; Our conclusion, therefore, is that both of these decrees are erroneous in the particulars indicated, and that they must be reversed and annulled, and the cause must be remanded to the circuit court of Page county, with directions to set aside the sale of the Coffman farm, and to have the same conveyed to Mrs. Mary E. Walker by proper deed, and to be further proceeded with in accordance with the views herein expressed.

DECREES REVERSED.