# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## ATWELL AND OTHERS V. GORDON AND OTHERS.

### March 15, 1923.

1. HUSBAND AND WIFE—*Common-Law Disabilities of Wife—Conveyance Direct from Wife to Husband—Case at Bar.*—In the instant case, in 1854, a husband and wife united in a deed of trust of the wife's interest in certain realty to secure the payment of certain notes. Immediately following the habendum clause of the deed of trust was a clause providing that in case the wife should die without leaving any children, or descendants of children, "the property above described is hereby conveyed" to the husband.

   *Held:* That this clause had no connection with the trust declared in the deed but was wholly separate and distinct, and was an attempt on the part of the wife to convey the property to the husband, or a covenant to make such conveyance. At that time the wife labored under a full common-law disability of coverture, and the attempted conveyance from her directly to her husband was at law a nullity.

2. HUSBAND AND WIFE—*Common-Law Disabilities of Wife—Conveyance of Land by Wife—Acknowledgment—Recording.*—As the law stood in 1854 all the common-law disabilities attached to married women in this State, except that, by uniting with her husband and submitting to privy examination, she could convey her own land or her dower in the land of her husband, but the law was strict in requiring a substantial compliance with the statute as to the acknowledgment, and even then the title did not pass unless and until the deed was admitted to record as to the husband as well as the wife.

3. ACKNOWLEDGMENTS—*Married Women—Compliance with Statute.*—In 1854, if the statute for acknowledgments by married women was not substantially complied with, the deed was void as to the wife.

4. HUSBAND AND WIFE—*Conveyances by Wife—Joinder of Husband in Conveyance.*—To constitute a grant there must be a grantor and a grantee, and in order for a wife laboring under the common-law disability of coverture to convey to a third person, it was necessary for her husband to unite with her in the deed and for her to make the privy acknowledgment required by the statute. It was the union of the husband and wife as grantor that made the instrument operative, and without such union the deed was inoperative under the statute to convey any estate out of the wife.

5. HUSBAND AND WIFE—*Common-Law Disabilities of Wife—Conveyance by Wife to Husband.*—Where the wife labored under the common-law disability of coverture if the wife conveyed directly to the husband, it was necessary for the husband and wife to unite in a deed as grantors and convey to the husband as grantee, which involved the absurdity of the husband conveying to himself. To obviate this absurdity, when the wife desired to make a conveyance to her husband, title of the wife was vested in a third person by a conveyance from husband and wife, and this third person then conveyed to the husband.

6. HUSBAND AND WIFE—*Common Law—Conveyances of Husband and Wife to Each Other.*—The common law considered the husband and wife so nearly one that the husband could neither directly convey to his wife nor be directly a grantee from her.

7. HUSBAND AND WIFE—*Conveyance by Wife Directly to Husband—Equity.*—Equity will, in some cases, uphold a deed directly from a wife laboring under the common-law disability of coverture to the husband, where there is a reasonable consideration. If, however, the conveyance is without consideration it will not be sustained in equity, and in many jurisdictions the courts have refused to give effect to a conveyance by a wife directly to her husband, though made for a valuable consideration.

8. HUSBAND AND WIFE—*Wife's Equitable Separate Estate—Conveyance to Her Husband.*—Where the estate of a wife was an equitable separate estate, with no restraint on her power of alienation, she had the right to dispose of it as if sole, and her conveyance to her husband invested him with the full equitable estate.

9. HUSBAND AND WIFE—*Wife's Equitable Estate—Husband as Trustee.*—As the law formerly stood, if an equitable separate estate was in fact created by a third person in the wife, but no trustee was mentioned, the husband was treated as trustee for the wife.

10. HUSBAND AND WIFE—*Deed Directly from Husband to Wife—Meritorious Consideration.*—It would seem that a provision for a wife or child constitutes a meritorious consideration which was sufficient to enable a court of equity to remedy a defective settlement made by a husband or father for his wife or child, although it be in the form of a deed directly from a husband to his wife.

11. HUSBAND AND WIFE—*Conveyance by Husband to Wife—Equitable Separate Estate—Husband as Trustee for Wife.*—In the case of a conveyance by a husband to his wife, the legal title at common law did not pass out of the husband, but he held it as trustee for the wife, and the estate vested in the wife was held to be an equitable separate estate, although no trust was declared, for in no other way could the instrument be made effective, and as no restraints on alienation were imposed she could, if it were real estate, dispose of it in the mode prescribed by statute for the alienation of real estate by married women, or by will.

12. HUSBAND AND WIFE—*Protection of Interests of Married Women in Equity.*—Many restrictions upon the powers of married women were recognized and enforced, in settlements upon married women, which would have been simply void if the beneficiaries had been men, and courts of equity were always open for the enforcement of their rights and the protection of their interests.

13. HUSBAND AND WIFE—*Conveyance by Wife to Husband—Transaction Strictly Scrutinized.*—Even when a trustee was interposed and the conveyance from a wife to her husband was in all respects regular, the transaction was closely scrutinized to see that the conveyance was a voluntary act of the wife and free rom the coercion of the husband.

14. HUSBAND AND WIFE—*Conveyance by Wife to Husband—Consideration—Equitable Relief—Case at Bar.*—In the instant case, in 1854, a husband and wife united in a deed of trust of the wife's interest in certain realty to secure the payment of certain notes. By a clause in the deed the wife attempted upon her death without issue to convey the property to her husband. The wife had no equitable separate estate, and her attempted conveyance was not founded on a valuable consideration. If any estate passed out of her to the use of her husband by the deed of trust to the trustee, it was released to and reinvested in her by a deed of release, and both husband and wife, during a subsequent coverture of over fifty years, treated the alleged conveyance as a nullity, and each by will so treated it. Moreover, the claim that equity should aid the defective conveyance of the wife to the husband was made by collateral kindred of the husband against the executor and devisees of the wife.

*Held:* That this was not a case for the aid of a court of equity, and that the attempted conveyance from the wife to her husband, whether considered as a conveyance or as a covenant by the wife to convey, was void in equity as well as at law, and that the clause could not be interpreted as a conveyance from the husband and wife to the trustee for the use and benefit of the husband.

Appeal from a decree of the Chancery Court of the city of Richmond. Decree for complainants. Defendants appeal.

*Affirmed.*

The opinion states the case.

*Page & Leary* and *Bruns, Bartlett, Poe & Claggett,* for the appellants.

*S. A. Anderson* and *Jas. E. Cannon*, for the appellees.

BURKS, J., delivered the opinion of the court.

On the partition of the estate of Col. Randolph Harrison, in 1854, there was assigned to his daughter Louisa H. Hagner, wife of Alexander B. Hagner, an undivided one-half interest in certain real estate in the city of Richmond, known as the "Shockoe Warehouse Property," subject to a charge of nearly $13,000.00 for owelty of partition. In order to relieve this charge, Alex. B. Hagner executed a note for $13,000.00 which was endorsed by Daniel R. Hagner and Alexander Randall, and discounted it at bank. On May 20, 1854, Hagner and wife executed to Julian Harrison, trustee, a deed of trust on the half interest in the Shockoe warehouse property, to secure the said endorsers and indemnify them against loss by reason of their endorsement of said note, or any renewal or renewals thereof, in whole or in part. The note was eventually paid, and a deed of release was executed by the trustee in 1872, in which deed the said endorsers united. In the deed of trust Hagner and wife were designated as parties of the first part, Harrison as party of the second part, and the endorsers as parties of the third part.

The sole object of the deed of trust, as appears from the recitals therein, was to secure and indemnify the said endorsers. It conveyed the property to Harrison, trustee, in the usual form, and contained the following habendum: "To have and to hold to him, the said Julien Harrison, upon this trust, however, that the said Julien Harrison shall permit the said parties of the first part to remain in undisturbed possession of said property, and to receive and control the proceeds, rents and issues of the same until default shall be made in the

payment of said note or the notes substituted by re-
newal therefor, and in the event of default being made
in the payment of said notes at maturity, and the securi-
ties shall become liable therefor, that then upon notice
being given to the trustee, and upon his being required
by the parties of the third part, the said Julien Harri-
son, trustee, shall advertise said property for at least
ninety days and make sale of such portion, and such
portion only, of said undivided moiety in said ware-
house and its appurtenances as may be necessary to
pay the amount of such liability as may have been in-
curred by the securities aforesaid."    Immediately fol-
lowing the habendum clause, is the following clause:
"It is here further agreed and understood that in case
the said Louisa H. Hagner shall die without leaving
any children or descendants of children, that then the
property above described is hereby conveyed to the
said Alexander B. Hagner in fee simple."

The deed of release bears date November 20, 1872,
and was made "between Julien Harrison, of the first
part, Louisa H. Hagner, wife of Alexander B. Hagner,
of the second part, and Dr. Daniel R. Hagner and
Alexander Randall, of the third part," the last two
mentioned being the endorsers of said note for $13,000,
and was duly executed by said trustee and benefici-
aries.    This deed recites the deed of trust, and the pay-
ment of said note and all renewals thereof, and that
"the said Louisa H. Hagner has requested that said
trust deed shall be released."    Alexander B. Hagner
was not a party to this deed.    After making the fore-
going recitals, Harrison, trustee, and Daniel R. Hagner
and Alex. Randall (endorsers of the notes) released to
Louisa H. Hagner "all their claims on said property
under said deed of trust."    Then follows the following
clause:    "It being the express and only object and pur-

pose of these presents to release the said deed from the said Hagner and wife to the said Julien Harrison, so far as the said deed creates a trust for the security of the said debt of $13,000.00 referred to therein, but in no respect to alter or disturb the settlement therein made of the property therein referred to and thereby conveyed to the said Alexander B. Hagner or Louisa H. Hagner." Louisa H. Hagner died without issue in 1905, leaving a will by which, among other things, she specially directed her "undivided one-half interest in the Shockoe warehouse property" to be sold, and the proceeds paid to certain designated persons. Her husband was named as executor of her will and qualified as such. By the first clause of her will she gave all of her estate of every kind to her husband for his life. She had personal estate of the value of about $1,200.00, but no real estate except the half interest in the Shockoe warehouse property. When her will was probated in the city of Washington, where she resided at the time of her death, her husband filed a petition asking to have the will probated in which he says that the will was executed on April the 5th, 1893, and that she died "seized and possessed of the real and personal property hereinafter more particularly set forth" and when he comes to the particular description of the real estate, he states "that the real estate of which the testatrix died seized is described in her will as an undivided one-half interest in the Shockoe Warehouse property in the city of Richmond." The will is a holograph will, but bears internal evidence of having been drafted by a lawyer, or at least by some one skilled in such matters, which was probably done and a copy made by the testatrix. Alexander B. Hagner died, testate, in 1915. One clause of his will recognizes and approves a bequest of $2,000.00 made by his wife, in her will, which could

only have been paid in part, at least, from the proceeds of the sale of the Shockoe Warehouse property. He left quite an elaborate will, but in no way mentions or attempts to dispose of the Shockoe Warehouse property or any interest therein. . Various other things are relied on by the legatees of Mrs. Hagner to show that the heirs and devisees of Alexander B. Hagner are estopped from asserting any claim to an interest in the Shockoe Warehouse property, but in the view we take of the case it is not necessary to mention them.

The bill in this case was filed by the executor of Louisa H. Hagner and the beneficiaries under her will against the devisees and heirs of Alexander B. Hagner. The complainants in the bill who are in possession of the property claim a fee simple title to the Shockoe Warehouse property, and charge that a cloud is cast upon their title by virtue of a claim asserted by the devisees and heirs of Alexander B. Hagner, that the property belonged to them by virtue of the clause in the deed of trust to Julien Harrison, trustee, herein-before quoted, which cloud they asked to have removed and their title definitely ascertained and settled.

Six of the devisees and heirs of Alexander B. Hagner filed disclaimers of any interest in the subject of litigation. The others demurred and answered, and the cause came on to be heard upon the bills and exhibits, the demurrers and joinder, the answers and general replication, the disclaimers and several affidavits. So much of the decree of the trial court as need be recited was as follows:

"And the court proceeding now to dispose of the matters by the pleadings put in issue between the complainants and other or contesting defendants, is of opinion and doth declare that the provision appearing at the end of the deed of trust of May 20, 1854 (exhibit

L. H. No. 4 with the bill of complaint), from Alexander
B. Hagner and Louisa H. Hagner, his wife, to Julien
Harrison, trustee, in trust to indemnify the endorsers
of the note therein mentioned, which provision is in the
words following, to-wit:

" 'It is here further agreed and understood that in
case the said Louisa H. Hagner shall die without leaving
any children or descendants of children, that then the
property above described is hereby conveyed to the
said Alexander B. Hagner in fee simple,' had no con-
nection whatever with the trusts declared by said deed
but was wholly separate and distinct therefrom and was
an attempt on the part of the said Louisa H. Hagner,
during coverture, without the intervention of a third
person, to convey, subject to the contingency therein
mentioned, her common-law land, to-wit: her moiety
in the Shockoe Warehouse property situate in the city
of Richmond, Virginia, directly to her husband, the
said Alexander B. Hagner, in fee simple and was, under
the law then in force, null and void both at law and in
equity and was wholly ineffectual to pass any right,
title or interest in the said real estate to the said Alex-
ander B. Hagner, and was so treated by both himself
and his said wife as indicated by their respective wills,
acts and conduct and furnishes no foundation whatever
for the claim, in the pleadings mentioned, of the de-
fendants that they are entitled to said real estate as
the devisees or heirs at law of the said Alexander B.
Hagner, and the court doth accordingly so adjudge,
order and decree."

[1-6] In this opinion we concur.  The sole object of
the deed of trust to Harrison, trustee, as appears on its
face, was to secure the endorsers on his note.  The ob-
ject stated in the deed, and the only object stated
therein was "for the purpose of securing the said securi-

ties from all loss that may occur by reason of their liability as securities." This was completely done by the deed without the insertion of the last clause therein hereinbefore referred to. That clause was not a trust in Harrison for the benefit of Alexander B. Hagner, but an attempt on the part of Mrs. Hagner to convey the property "to said Alexander B. Hagner in fee simple," or a covenant to make such conveyance. At that time Mrs. Hagner labored under the full common-law disability of coverture, and the attempted conveyance from her directly to her husband was at law a nullity. Co. Litt. 187b; 1 Black. Com. 442; 1 Minor's Inst. (3rd ed.), 323, 355; 21 Cyc. 1291; 13 R. C. L. 1378; 1 Bishop's Married Women, sec. 711. As the law stood in 1854 all the common-law disabilities attached to married women in this State, except that, by uniting with her husband and submitting to privy examination, she could convey her own land or her dower in the land of her husband, but the law was strict in requiring a substantial compliance with the statute as to the acknowledgment, and even then the title did not pass unless and until the deed was admitted to record as to the husband as well as the wife. Code 1849, chapter 121, section 7; *Rorer's Heirs* v. *Roanoke National Bank*, 83 Va. 589, 4 S. E. 820. If the statute for acknowledgments by married women was not substantially complied with, the deed was void as to the wife. *Currie* v. *Page*, 2 Leigh (29 Va.) 517; *Hairston* v. *Randolphs*, 12 Leigh (39 Va.) 445; *Grove* v. *Zumbro*, 14 Gratt. (55 Va.) 501; *Switzer* v. *Switzer*, 26 Gratt. (67 Va.) 574; *First National Bank* v. *Paul*, 75 Va. 594, 40 Am. Rep. 740.

Moreover, to constitute a grant there must be a grantor and a grantee, and in order for a wife to convey to a third person, it was necessary for her husband to unite with her in the deed and for her to make the privy

acknowledgment required by the statute. "It is the union of husband and wife as grantors that makes the instrument operative." *Switzer* v. *Switzer*, 26 Gratt. (67 Va.) 574, 583. Without such union the deed was inoperative under the statute to convey any estate out of the wife. If, therefore, the wife conveyed directly to the husband, it was necessary for the husband and wife to unite in a deed as grantors and convey to the husband as grantee, which involved the absurdity of the husband conveying to himself. To obviate this absurdity, when the wife desired to make a conveyance to her husband, title of the wife was vested in a third person by a conveyance from husband and wife, and this third person then conveyed to the husband (*Shepperson* v. *Shepperson*, 2 Gratt. [43 Va.] 501) "for the obvious reason that title to the wife's real estate can, in no other way, be vested in the husband." *Griffin* v. *Birkhead*, 84 Va. 612, 618, 5 S. E. 685. See also 1 Bishop's Married Women, sec. 713; 1 Minor's Inst. (3rd ed.), 323.

In the case in judgment, no trustee was interposed in the agreement and understanding whereby the "property above described is hereby conveyed to the said Alexander B. Hagner in fee simple." The property was not conveyed to Harrison for this purpose. If that clause of the deed can be construed as a conveyance at all, it is a conveyance from the wife directly to her husband. At common law such a conveyance was held to be void usually upon the ground of the unity of the husband and wife, but there was also the reason of public policy growing out of the theory that the wife was under the power and control of her husband, and consequently she ought not to be bound by her acts while under his coercion. 21 Cyc. 1291 and cases cited. The law on this subject is well and briefly stated in

*Alexander* v. *Shalala*, 228 Pa. 297, 77 Atl. 554, 139 Am.
St. Rep. 1005, 31 L. R. A. (N. S.) 844; 20 Ann. Cas.
1330, as follows:

"The common law considered the husband and wife
so nearly one that the husband could neither directly
convey to his wife nor be direct grantee from her.   21
Cyc. 1284, 1291.   To render such a conveyance from
the wife to the husband valid, the statute must confer
the power upon her, and thereby remove her common-
law disability.   21 Cyc. 1292; 1 Bishop on Married
Women, sections 710, 711; *Rico* v. *Brandenstein*, 98 Cal.
465, 33 Pac. 480, 35 Am. St. Rep. 192, 20 L. R. A. 702;
and the fact that a valid conveyance can be made in-
directly through the medium of a third person will not
alter the rule.   21 Cyc. 1292, sec. 4; 1 Bishop on Mar-
ried Women, sections 712, 713; *White* v. *Wager*, 25
N. Y. 328 and *Riley* v. *Wilson*, 86 Tex. 240, 24 S. W.
394."

[7] Equity will, however, in some cases, uphold a
deed directly from the wife to the husband, where there
is a reasonable consideration.   21 Cyc. 1291.   But
what this class of cases is it is not easy to say from the
authorities.   In 13 R. C. L. 1378, it is said that "courts
of equity have given effect, when free from any impu-
tation of fraud and when based on a good considera-
tion, to conveyances by a wife of her separate property
directly to her husband.   If, however, the conveyance
is without consideration it will not be sustained in
equity, and in many jurisdictions the courts have re-
fused to give effect to a conveyance by a wife directly
to her husband, though made for a valuable consider-
ation."

[8, 9] In *Turner* v. *Shaw*, 96 Mo. 22, 8 S. W. 897, 9
Am. St. Rep. 319, a husband, in consideration of na-
tural love and affection, conveyed land directly to his

wife "to have and to hold unto the said Sarah Ann Turner (wife) to her sole use and benefit." Subsequently, the wife re-conveyed the land to her husband. It was held that the.first deed conveyed only an equitable estate; that the husband held the legal title as. trustee for the wife; that the estate of the wife was an equitable separate estate, with no restraint on her power of alienation; that she had the right to dispose of it as if sole, and that her conveyance to her husband invested him with the full equitable estate. As he already held the legal title, he thus became vested with full legal and equitable title to the land. This view as to the powers of a married woman over her equitable separate estate, where her powers are not restrained, accords with the holdings in this State. *Justis* v. *English*, 30 Gratt. (71 Va.) 565, 571; cases cited in Burks' Separate Estate, p. 22. As the law formerly stood, if an equitable separate estate was in fact created by a third person in the wife, but no trustee was mentioned, the husband was. treated as trustee for the wife. *Nixon* v. *Rose*, 12 Gratt. (53 Va.) 425; 2 Pom. Eq. sec. 1100.

In *Depue* v. *Miller*, 65 W. Va. 120, 64 S. E. 740, 23 L. R. A. (N. S.) 775, upon a state of facts almost identical with those in *Turner* v. *Shaw, supra,* except that. the consideration of the deed in *Depue* v. *Miller* is not stated, and the deed contains no words indicating an intention to create an equitable separate estate, it was. held that the deed from the husband to the wife vested in the wife the equitable title to the land "and the deed from the wife to the husband was utterly void," although the question arose in a suit in equity to remove a cloud on the title held by the alienees of the husband. Apparently the court thought that no equitable estate was created in the wife in that case.

In *Jones* v. *Obenchain*, 10 Gratt. (51 Va.) 259, a hus-

band conveyed land directly to his wife "for a good con-
sideration together with the good will and affection."
After the deaths of both husband and wife, collateral
heirs of the husband brought ejectment against the
heirs of the wife, and, the deed aforesaid being excluded
from the evidence because void at law, the plaintiffs
recovered a judgment for the land.   Thereupon one of
the heirs of the wife sought and obtained an injunction
against the enforcement of the judgment on the ground
that the deed was founded on a valuable and also a
meritorious consideration and was valid and would be
upheld in equity.   The court was of opinion that the
evidence did not make out a case of valuable considera-
tion, but did show a very highly meritorious considera-
tion, and upon that ground upheld the validity of the
deed and perpetuated the injunction.   Some of the
observations of Allen, J., in the course of the opinion of
the court, are very pertinent and highly instructive.
He says:

"It is a maxim of equity that the court will not inter-
fere in favor of a mere volunteer.   The mere intention
to bestow a bounty, however clearly proved, is not of
itself sufficient to create a binding engagement.   Some
consideration is essential to the validity of the act.

"In consequence of the unity of person between the
husband and wife, neither can grant to the other an
estate to take effect in possession during the coverture.
Lit. sec. 168.   But although such conveyance be void
at law, a court of equity is not precluded, under certain
circumstances, from giving effect to it.   *Shepard* v.
*Shepard*, 7 John. Ch. R. 57."

Referrring to some of the English cases and comments
thereon in White & Tudor's Leading Cases in Equity,
167, he says:

"But the principles involved in those decisions are

applicable only to cases where there was no considera-
tion of any kind for the assignment or conveyance.
They do not touch the question how far a court of
equity will lend its aid in giving effect to an imperfect
conveyance founded on a mere meritorious considera-
tion, meaning thereby a provision for a wife and children
after marriage.

"In all those cases a sufficient consideration was
necessary to call into exercise the powers of a court of
equity; and a provision for a wife or child being a meri-
torious consideration, had always been held as sufficient
to enable a court to remedy a defective settlement,
where there is no contract.

"From this review of the English cases the American
editor states the result of the English authorities to be,
that equity will aid a defective transfer which was in-
tended and meant to be a complete present transfer
upon a meritorious consideration, against one not stand-
ing in the relation of wife or child, as a brother or other
collateral relation; but that it will not interfere between
those standing upon the same meritorious considera-
tion, being children, or children and widow of the per-
son whose estate is in question."

After commenting upon the decision in *Darlington* v.
*McCoole*, 1 Leigh (28 Va.) 35, and referring to the de-
cision in that case, Judge Allen says:

"There was neither a valuable nor a meritorious con-
sideration, without one of which a court of equity will
not aid a defective conveyance, much less enforce a
bare agreement, even if it were in writing. The case is
no authority on the question involved in the one now
under consideration; but it serves to show the impres-
sion on the minds of the judges of this court, that where
there was a meritorious consideration, meaning thereby
a provision for a wife or child, equity would enforce a
defective conveyance."

Finally Judge Allen observes:

"No creditor was injured, and the party claiming against the deed is not the grantor himself or a subsequent purchaser for value without notice, or one standing in the relation of a wife or child; but a collateral relation, the nephews of the grantor. The proof shows that the consideration was not only meritorious in consequence of the relation between the husband and wife, but that the grantor regarded it as highly meritorious; and that his object was not only to make provision for his wife, but through her to acquit himself in part of the obligation which he admitted he owed to her and her sons for their labor on his farm, and the support thereby afforded to himself and his aged and infirm sisters."

[10, 11] The cases relied on by Judge Allen seem to hold that a provision for a wife or child constitutes a meritorious consideration which is sufficient to enable a court of equity to remedy a defective settlement made by a husband or father for his wife or child, although it be in the form of a deed directly from a husband to his wife. *Jones* v. *Obenchain, supra,* was followed in *Sayers* v. *Wall,* 26 Gratt. (67 Va.) 354, 21 Am. Rep. 303, and *Keffer* v. *Grayson,* 76 Va. 517, 523, 44 Am. Rep. 171.

[12] In the case of a conveyance by a husband to his wife, the legal title at common law did not pass out of the husband, but he held it as trustee for his wife, and the estate vested in the wife was held to be an equitable separate estate, although no trust was declared, for in no other way could the instrument be made effective, and as no restraints on alienation were imposed she could, if it were real estate, dispose of it in the mode prescribed by statute for the alienation of real estate by married women, or by will. *Sayers* v. *Wall,* 26 Gratt. (67 Va.) 354, 21 Am. Rep. 303; *Leake, Trustee,* v. *Ben-*

*son,* 29 Gratt. (70 Va.) 411, 419; *Justis* v. *English,* 30 Gratt. (71 Va.) 565. It is said in *Sayers* v. *Wall, supra,* that the husband's deed passed both the legal and the equitable title, but this is error as to the legal title. Courts of equity exercised large powers in the protection and giving effect to settlements upon married women and infant children, and it was said "courts of equity will exert their powers when necessary, and in a proper case, to give effect to such settlements." *Sayers* v. *Wall,* 26 Gratt. (67 Va.) at p. 374, 21 Am. Rep. 303. Many restrictions upon the powers of married women were recognized and enforced, in settlements upon married women, which would have been simply void if the beneficiaries had been men, and courts of equity were always open for the enforcement of their rights and the protection of their interests.

[13] But the same rule did not apply to conveyances by a wife to her husband. Even when a trustee was interposed and the conveyance was in all respects regular, the transaction was closely scrutinized to see that the conveyance was the voluntary act of the wife and free from the coercion of her husband. In *Switzer* v. *Switzer,* 26 Gratt. (67 Va.) 574, 580, it is said:

"The distinction between a covenant or conveyance by the husband, and covenant or conveyance on the part of the wife, rests upon very substantial grounds. The husband is *sui juris;* he may dispose of his estate as he pleases; he may settle it upon his wife; he may bind himself to allow her a separate maintenance, * * *. The wife, on the other hand, as a general rule, can make no valid contract, especially with her husband; her legal existence is merged in him. The exceptions to this rule grew out of the possession of a separate estate by the wife, and do not affect the subject-matter here."

In 1 Minor's Inst. (3rd ed.), 355, it is said:

"And although, in consequence of husband and wife being deemed in law one person, neither can at law make a conveyance directly to the other; yet, in equity, conveyances directly from husband to wife, without the intervention of trustees, have long been sustained where clearly proved, so only that his creditors are not prejudiced, and, in general, also that the husband shall not divest himself of the whole, or of any unreasonable proportion of his estate, which would place him in an attitude of unnatural and unbecoming subordination to his wife, adverse to domestic felicity and to public policy. And by means of the statute of uses, land may be conveyed by the husband to the wife directly, so as to vest in her a legal title, namely, by covenanting with a third person, a stranger, in consideration of natural love and affection for the wife, to stand seized to her use. The statute then takes the possession out of the husband and vests it in the wife.

"*The wife cannot in like manner convey directly to the husband* (except her separate property or by power of appointment), because, save in those cases, no conveyance of a married woman is valid, even in equity, unless made in pursuance of the provisions of the statute upon the subject, one of which is that the husband shall unite in the conveyance; and it would be an incongruity, which might give even a court of equity pause, that husband and wife should convey to the husband; besides that, the wife, in such case, would no longer have that protection to her interests which the junction of the husband with her was designed to confer." (Italics supplied.)

[14] In the case in judgment, the wife had no equitable separate estate, and her attempted conveyance to

her husband was not founded on any valuable considera-
tion. If any estate passed out of her to the use of her
husband by the deed of trust to Harrison, trustee, it
was released to and re-invested in her by the deed of
release, and both husband and wife, during a subsequent
coverture of over fifty years, treated the alleged con-
veyance as a nullity, and each by will so treated it, and
recognized the power of the wife to dispose of it by her
will. Moreover, the claim that equity should aid the
defective conveyance of the wife is made by collateral
kindred of the husband against the executor and de-
visees of the wife. We are of opinion that it is not a
case for the aid of a court of equity, and that the at-
tempted conveyance from the wife to her husband, upon
the facts stated, is void in equity as well as at law.

We have dealt with clause in the deed of 1854, re-
ferred to, as though it were a conveyance directly from
the wife to her husband, and have seen that as such it
is void, but it is doubtful if it amounts to anything more
than a covenant or agreement on the part of the wife to
convey to her husband, upon the contingency mentioned,
which would be equally void. *Shenandoah Valley R. Co.*
v. *Dunlop*, 86 Va. 345, 10 S. E. 239; *Wynn* v. *Louthan's
Adm'r*, 86 Va. 946, 11 S. E. 878; *Nalle* v. *Farish*, 98 Va.
130, 132, 34 S. E. 985, and cases cited. We do not un-
derstand that counsel for the appellants deny that if
the transaction was directly between husband and wife,
it is void both at law and in equity, but contend that it
was a conveyance from the husband and wife to the
trustee for the use and benefit of her husband, but we
do not think that the instrument is susceptible of that
interpretation. It is either an attempted conveyance
from the wife to her husband, or a covenant to convey

upon a given contingency, either of which we have seen is void both at law and in equity.

Having arrived at that conclusion, it is unnecessary to consider the subjects of election and estoppel so ably discussed by counsel.

We are of opinion that there is no error in the decree of the Chancery Court, and it is therefore affirmed.

*Affirmed.*